BOSTON CHAMBER OF COMMERCE & others *vs.* CITY OF BOSTON.

Suffolk.    March 8, 1907. — May 14, 1907.

Present: KNOWLTON, C. J., MORTON, HAMMOND, SHELDON, & RUGG, JJ.

*Way. Easement. Damages*, For property taken or injured under statutory authority.

Where parties who have several estates in the same real estate join under R. L. c. 48, § 20, in one petition against a city for damages for the taking of a parcel of land as a public street, and it appears that one of the petitioners conveyed the parcel of land to the other, reserving easements of way, light and air, that the parcel adjoined a private way which was laid out as a public street, to form a part of which the parcel was taken, that the keeping open of the parcel was important if not essential to the advantageous use of the property of both petitioners adjoining and near it, and that the taking would not affect materially the value or the use of the property, and if the petitioners have filed a stipulation, not assented to by the respondent, that damages may be awarded to the petitioners in a lump sum without an apportionment, the provision of R. L. c. 48, § 22, that if "the jury find any of the parties entitled to damages, they shall first find and set forth in their verdict the total amount of damages sustained by the owners of such property, estimating the same as an entire estate and as if it were the sole property of one owner in fee simple," does not require that the jury shall make an award equal to what would be the full value of the land if there were no easements upon it and if it were available for the erection of buildings, but the provisions of the chapter merely are intended to provide compensation for the public easement which is taken, and the jury are to find, not the value of the land, but the total amount of damages sustained by the owners.

PETITION, filed in the Superior Court for the county of Suffolk, on February 17, 1902, under R. L. c. 48, § 27, by the Boston

Chamber of Commerce, the Boston Five Cents Savings Bank and the Central Wharf and Wet Dock Corporation for the assessment of damages, the petitioners being aggrieved by the refusal of the street commissioners of the city of Boston to award any damages to the petitioners for the taking of part of their property for the extension of Milk Street in Boston.

The petitioners filed in court the following stipulation, which was not assented to by the respondent:

"In the above entitled cause it is stipulated and agreed by all the petitioners in said cause that the jury may find and return a verdict for the total amount of damages sustained by the owners of the property involved in this suit, estimating the same as an entire estate and as if it were the sole property of one owner in fee simple and that the total amount of damages so found need not be apportioned by the jury in their verdict among the parties entitled thereto.

> "Boston Chamber of Commerce,
>      By Charles S. Hamlin, Attorney,
>   The Boston 5 Cents Savings Bank,
>      By C. S. Hamlin, Attorney,
>   Central Wharf and Wet Dock Corporation,
>      By Charles A. Williams, Atty."

The case was tried before *Bishop,* J., who reported it for determination by this court as stated below. The facts reported by the judge are stated in the opinion.

The following is a reduced copy of a part of the plan which was used at the trial and which is referred to in the opinion.

At the trial the petitioners contended and asked the judge to rule and to instruct the jury (1) that the damages were to be assessed as of the date of the order laying out the street, and that

the only persons who could recover damages on account of such laying out were the persons interested in the land at that time; that as the petitioners together owned the entire title to the twenty-nine hundred and fifty-five square feet of land taken for the street, and as they had filed in court a stipulation that the damages might be awarded to the petitioners in a lump sum and were not to be apportioned between the petitioners by the jury, the petitioners were entitled to recover the full fair market value of the property taken, which they offered to show was $60,000 ; (2) that the petitioners were entitled to recover the full fair market value of the land taken, estimating it as if it were an entire estate and as if it were the sole property of one owner in fee simple: (3) that, even if as a matter of law the Central Wharf and Wet Dock Corporation was not entitled to recover any damages for or on account of the taking, then the other petitioners jointly, or the Chamber of Commerce alone, were entitled to recover the full market value of the property taken, estimating it as if the land taken were at the time of the taking the sole property of one owner in fee simple and unincumbered.

The respondent objected to the rulings asked for by the petitioners, and contended and asked the judge to rule that the damages were to be assessed as of the date of the order laying out the street and according to the condition of the title of the land at that time; that the owners of estates for whose possible or probable benefit the restrictions had been placed upon adjoining lands were not the owners of such interests in land as are entitled to damages under R. L. c. 48, and asked the judge to rule that the taking for highway purposes did not take the fee of the land, but only imposed upon it an easement of public travel, and if the jury were of opinion that, when land in this vicinity was subject to a restriction so that it could not be built upon, the only real advantage which came to the owners from its possession was that of light and air, and were of opinion that light and air from the street would be just as valuable as the light and air from the open space, that, as the owners would be relieved by reason of the taking from paying taxes upon the land to be used for street purposes, they could find no damages or such sum as they might think the Chamber of Commerce was

entitled to by reason of the taking of this restricted land; that in considering the question of the fair market value of the land taken and the damage, if any, to the remaining estate, they could take into consideration the probability or improbability of the Central Wharf and Wet Dock Corporation releasing its rights in the land so far as such probability or improbability might affect the judgment of a possible purchaser.

The respondent offered to show, by the testimony of witnesses qualified to testify as to the fair market value of land in this part of Boston, that as the land at the time of the passage of the order was owned by the Boston Chamber of Commerce, subject to the reservation and restriction that it could not be built on, which restriction was of great value to the Central Wharf and Wet Dock Corporation, the damage to the fair market value of the estate of the Boston Chamber of Commerce by reason of the taking was little or nothing.

The petitioners objected to the rulings asked for by the respondent, and contended that such evidence was immaterial, incompetent and inadmissible generally, and especially was immaterial and incompetent in this proceeding in which all the parties having any interest in the land taken at the time of the laying out had joined as petitioners, and had filed in court a stipulation that damages might be awarded the petitioners in a lump sum without apportionment between the petitioners, and was calculated to divert the minds of the jury from the real issue in the cause; and also was incompetent and inadmissible for the reason that the proposition contended for by the respondent and sought to be proved by such witnesses was not and could not be the subject of expert testimony; and that, even if the proposition could be the subject of expert testimony, the witnesses offered by the respondent, being qualified merely as experts of the value of real estate in this part of Boston, were not qualified to testify upon the subject matter of the respondent's contention.

It was agreed that if the law was substantially as stated in the petitioners' requests for rulings, damages were to be assessed for the petitioners in the sum of $60,000 without interest; and if as matter of law, in the state of the title at the time of the taking, the petitioners were in no event entitled to full damages,

estimating them as if the land taken were an entire estate and as if it were at the time of the taking the sole property of one owner in fee simple, and if the evidence offered by the respondent was admissible and competent, and the law was substantially as stated in the respondent's requests for rulings, the petitioners' damages should be $5,000 without interest.

The petitioners contended and asked the judge to rule that if the statutes under which these proceedings were brought were to be construed as contended for by the respondent, or so as to deprive the petitioners of the right to recover the full fair market value of the property taken, the statutes as so construed would be unconstitutional under the Constitutions of the Commonwealth and of the United States, and particularly and especially under the Fourteenth Amendment of the Constitution of the United States, and they contended that such construction of the statutes was erroneous.

The judge refused to rule as requested by the petitioners, and ruled that the evidence offered by the respondent as to the damages to the petitioners in the state of the title at the time of the taking was admissible, material and competent, and also ruled that in the state of the title at the time of the taking the petitioners as matter of law were in no event entitled, nor was any one, or more, of them entitled, to recover the full fair market value of the property estimated as if the property taken were free from all reservations and restrictions; and ruled that the statute as so construed would not be unconstitutional either under the Constitution of Massachusetts or under the Constitution of the United States. He ordered a verdict for the petitioners in the sum of $5,000 without interest, which was returned accordingly, and at the request of the parties he reported the case for determination by this court.

If the rulings of the judge were right, judgment was to be entered for the petitioners on the verdict for $5,000 without interest. If the substance of the rulings requested by the petitioners ought to have been given, or if the petitioners or any of them in the state of the title at the time of the taking were entitled to recover the full fair market value of the property taken, estimated as if the property taken were free from all reservations and restrictions, the verdict was to be set aside, and

judgment was to be entered for the petitioners in the sum of $60,000 without interest.

*C. A. Williams & C. S. Hamlin*, for the petitioners.

*T. M. Babson*, for the respondent.

KNOWLTON, C. J.   On March 21, 1901, the Boston Chamber of Commerce owned in fee certain property, consisting of more than fifteen thousand square feet of land, on which it had erected a building for its own purposes.   This land was acquired in January, 1890, in part from Henry M. Whitney and in part from the Central Wharf and Wet Dock Corporation.   In the deed from this corporation there was a reservation of rights of way, light and air over a part of the premises described by metes and bounds, and containing thirty-five hundred and thirty-nine square feet.   The boundary of one side of this reserved space is a curved line, drawn with a radius of forty feet, eighty-three and fifty-three one hundredths feet in length, so as to conform to the curved front of the building erected by the Chamber of Commerce on the lot conveyed.   Adjacent to the lot was a private way known as Central Wharf or Central Wharf Street.   On March 21, 1901, the board of street commissioners of Boston laid out this private way as a public street — an extension of Milk Street from India Street to Atlantic Avenue — and, by the order of laying out, took for the public street about twenty-nine hundred and fifty-five square feet of land from the parcel belonging to the Chamber of Commerce, included in the reservation.   The street commissioners estimated that no persons had sustained damages by the extension of Milk Street, and accordingly assessed no damages.   At the time of the laying out, the Boston Five Cents Savings Bank held, and now holds, a mortgage on the land, including that covered by the reservation.

This is a petition brought by these three corporations jointly, under the R. L. c. 48, § 20, for the assessment of damages for the taking of this land.   The petitioners filed a stipulation in the case that damages might be awarded in a lump sum to all the parties interested, without an apportionment; but the respondent refused to assent to such a disposition of the case.

The contending parties, at the trial, differed widely in their view of the law applicable to the facts of the case.   The re-

spondent offered to prove that the reservation was of great value to the Central Wharf and Wet Dock Corporation, which at the time of the laying out was an owner of property on the private way that was laid out as a public street.    While the report states that, apart from the reservation, it was possible and practicable for the Chamber of Commerce to have built over the reserved space,* it might fairly be contended from the appropriation and use of the property by the Chamber of Commerce, as shown by the deeds and plan, that the keeping of this space open was of great value to the remainder of its estate, occupied by the building, and that this use of the land, for the benefit of the parties under the deeds, was the best use to which it could be put, and that the appropriation of it to this use was intended to be permanent.    The respondent contended that, inasmuch as the taking of the property for a street only imposed upon it an easement for public travel, the Chamber of Commerce suffered little if any damage, in view of the easements previously existing upon the land, and that, in considering the market value of the land taken and the damage to the remaining estate, the jury could consider the probability or improbability of the Central Wharf and Wet Dock Corporation releasing its rights in the land, so far as this might affect the judgment of a possible purchaser.    It also contended that the Central Wharf and Wet Dock Corporation suffered no damage that could be recovered under this petition.

The petitioners contended that they were entitled to recover the full fair market value of the land taken, estimating it as if it were an entire estate, and as if it were the sole property of one owner, in fee simple.    They offered evidence tending to show that such market value was $60,000.    It was agreed that, if the law was substantially as stated in the petitioners' requests for rulings, damages were to be assessed in the sum of $60,000,

---

\* The portion of the report referred to was as follows:

"Apart from said reservation it was possible and practicable for said Chamber of Commerce to have built over said reserved space, including the land so taken, by the extension of the building now on said property, or by the erection of another building.    Said reservation was in full force and effect at the time of said taking.

"Said land taken had never been dedicated to the public, but was at all times kept in order and repair by said Chamber of Commerce."

without interest, and if the law was substantially as the respondent contended, the petitioners' damages should be $5,000, without interest.

We understand that the petitioners' contention calls for an award that shall equal the full value of the land included in the taking, as it would be if there were no restrictions upon it, and if it were available for use for the erection of buildings, or for other purposes such as give the land in that vicinity its market value.

The difference between the contentions of the parties, as we understand them, may be illustrated as follows: Suppose that B. owns a tract of land between two parallel streets thirty rods apart, in a rapidly growing city. Suppose that he locates a private street four rods wide through his land, connecting the two streets, and lays out building lots three rods wide on each side of it, and sells each lot to a purchaser, bounding him on the side of the private street, and giving him a right to use it as a street, while he retains the fee in himself. Suppose that a dwelling house is erected by each purchaser on his lot, and the city then lays out the private street as a public street, and a petition is brought, in which B. and the twenty lot owners join, for the assessment of damages. A hearing is had upon the petition. Under the R. L. c. 48, § 22, which is relied on by the present petitioners, " If, on such hearing, the jury find any of the parties entitled to damages, they shall first find and set forth in their verdict the total amount of damages sustained by the owners of such property, estimating the same as an entire estate and as if it were the sole property of one owner in fee simple; and they shall then apportion such damages among the several parties whom they find to be entitled thereto, in proportion to their several interests and to the damages sustained by them, respectively, and set forth such apportionment in their verdict; and if they find that any party has not sustained damage, they shall set forth in their verdict that they award him no damages." It is obvious, in the case supposed, that no one of the lot owners suffers any damage ; for the public easement taken by the authorities leaves every abutter with as advantageous rights to use the public street as he had before to use the private street. B. suffers no substantial damage; for he still remains

the owner of the fee of the street, and the public easement that is taken from him only extends to the general public the same right to use the street which twenty house owners and the persons coming to their houses had before. Besides, the city assumes the burden of keeping the street in repair. According to the contention of the petitioners in this case, these twenty-one persons who own rights in the private street which, if united, would make a perfect title in fee simple, can recover as damages, under their petition, the fair market value of the one hundred and twenty square rods of land included in the taking, estimated as if it were the property of a sole owner, free from all restrictions or incumbrances, ready for use for building lots or for any other purpose. Such a startling result compels a careful scrutiny of the statute to discover its true meaning.

It is to be noted that the section quoted above and the other provisions of the chapter are intended merely to provide compensation for that which is taken, and for any injury to property that is not taken. The law does not give to any one more than the damages that he sustains. It is a familiar rule that the damages are to be assessed in reference to conditions existing at the time of the taking. Because the taking of land for a highway or a railroad is an appropriation of it for all time, which ordinarily will deprive ·the owner of any valuable use of it in the future, the value of the easement taken is usually substantially the same as the value of the land. So, in many cases, the value of the land taken is referred to as the principal element of the damages to be assessed. *Commonwealth* v. *Coombs*, 2 Mass. 489, 492. *Presbrey* v. *Old Colony & Newport Railway*, 103 Mass. 1, 7. *Chase* v. *Worcester*, 108 Mass. 60, 67. *Edmands* v. *Boston*, 108 Mass. 535, 544, 545. But in a case like the present, or like the one supposèd, the value of the land, free from incumbrances, is very much more than the value of the easement taken. In the case supposed the private way was subject to an easement in favor of twenty house owners, before the taking, substantially the same as that taken for the public. It was far more valuable to the owners of this easement for use as a street than it could be for any other purpose. It was permanently appropriated to the use for which the easements were created, and it was so much more valuable for that use than for

any other, that a change of the use or an abandonment or sale of the easements would be hardly possible. Under these conditions the value of the easement taken, or the diminution in value of the property by reason of the taking of the public easement, would be but little if anything; for the taking would not materially affect the value or the use of the property. Under § 22, above quoted, the jury are to find, not the value of the land, estimating it as an entire estate and as if it were the sole property of one owner in fee simple; but they are to find the total amount of damages sustained by the owners. The value of the land is of no consequence, except as an aid in determining the value of the easement taken for the public, or the diminution in the value of the land by reason of the taking of the easement. If, before the taking, the land is subject to an easement nearly or quite as permanent in its nature as the easement taken for the public, and substantially the same in its effect upon the land in reference to other uses of it, very little, if any, value is taken from it by the taking of the public easement.

If, in the case that we have supposed, the owner of the land, instead of selling his building lots, had built a house upon each of them, and had been the owner of the private street and of houses built upon all the lots on each side of it when it was laid out as a public street, the same principles would apply. In that case the land of the private street would have its greatest value in a use which is not materially affected by the taking of the easement for the public. This is in accordance with the doctrine which underlies the assessment of damages in all cases of the taking of property under the right of eminent domain. *Allen* v. *Boston*, 137 Mass. 319. *Abbott* v. *Cottage City*, 143 Mass. 521, 526.

The provision in the R. L. c. 50, § 3, that "the damages for land taken shall be fixed at the value thereof before such laying out, relocation, alteration, widening," etc., referred to in *Benton* v. *Brookline*, 151 Mass. 250, means that the damages are not to be enhanced by an increase in value that results from the laying out or other change. It does not mean that, when the value of the easement taken is less than the value of the land, the owner is to be paid the whole value of the land.

The contention of the petitioners at the trial was erroneous.

If they were to receive the whole value of the land as an estate in fee simple, free from restrictions and incumbrances, they would be paid a large sum for the taking of an easement which would not affect the use that they were making of the land, and the use which, very likely, was the most valuable to which the land could ever be put, even if it never was taken for a public street.

*Judgment on the verdict.**

---

* The case was taken to the Supreme Court of the United States by writ of error.