VINCENT E. BARNES & another *vs.* CITY OF SPRINGFIELD.

SAME *vs.* SAME.

Hampden.    May 21, June 25, 1929. — September 24, 1929.

Present: RUGG, C.J., CROSBY, PIERCE, SANDERSON, & FIELD, JJ.

*Damages,* For property taken or damaged under statutory authority.
*Estoppel. Eminent Domain. Evidence,* Competency. *Husband and
Wife. Interest. Practice, Civil,* Exceptions, Judgment ordered by
Supreme Judicial Court. *Pleading, Civil,* In proceedings for assess-
ment of damages for property taken or damaged under statutory
authority. *Tenants in Common. Superior Court,* Jurisdiction.
*Waiver. Jury and Jurors.*

The maintenance of a petition under St. 1906, c. 317, § 7, for the assess-
ment of damages caused by the taking of land of the petitioner under
the provisions of that statute is based upon allegations of regularity
and legality in the taking, and the petitioner is precluded in such
proceeding, at any time, either before or after the opening of the trial,
from contending, or introducing evidence to show that the taking
was invalid and illegal.

The Superior Court under the provisions of St. 1906, c. 317, § 7; R. L.
c. 48, § 109, had jurisdiction to hear a petition of the character above
described.

At the hearing by this court upon a bill of exceptions, arguments based
upon documents, rulings, statements of fact or of evidence, which do
not appear to have been made a part of the bill of exceptions or in-
corporated therein by reference, cannot be considered.

At the argument before this court of a bill of exceptions, all exceptions
not argued must be treated as waived, notwithstanding a statement
in the brief of the excepting party that he does not waive any of those
which have not been argued.

Motions for continuance and for suspension of hearings of a petition
under St. 1906, c. 317, § 7; R. L. c. 48, § 109, are addressed to the
discretion of the court, and exceptions to the denial of such motions
were overruled.

There is no requirement that jurors called to try a petition under St.
1906, c. 317, § 7; R. L. c. 48, § 109, shall take an oath to support
the Constitution of the United States or the oath referred to in the
Sixth Amendment to the Constitution of this Commonwealth.

A husband by joining in a deed of real estate of his wife to release curtesy
does not convey to the grantee by estoppel a title which he had to
the fee.

Under St. 1906, c. 317, § 7, the right of a landowner to damages for the
taking of land was fixed as of the day when the vote of taking, after-

wards recorded, was passed, although a description and plan showing the property taken was not recorded until a later date.

The right to maintain a petition for the assessment of damages under St. 1906, c. 317, § 7; R. L. c. 48, § 109, was to be determined by the state of the petitioner's title at the time of the taking; and at the trial a deed of the property, delivered to him after the taking, was not admissible in evidence to show his title before the taking or as an assignment to him of the claim for damages due to the taking.

When a record before this court on exceptions saved at a trial in the Superior Court is so meagre that this court is unable to determine whether or not the trial judge erred in its rulings, the exceptions must be overruled.

In proceedings begun in 1909 and 1911 by petitions for the assessment of damages under St. 1906, c. 317, § 7; R. L. c. 48, § 109, a failure of the respondent to file an answer did not estop it from contesting the petitioner's title.

The respondent in such proceedings was not estopped to deny the petitioner's title by the fact that, in the vote of taking, it was stated that the owner of the real estate in question, so far as known, was the petitioner, where it does not appear that the petitioner acted upon or changed his position in reliance upon such statement or that he would have been justified in so doing.

At the trial of the petition above described, where the respondent did not admit that at the time of the taking the petitioner had title to the real estate in question, the burden was on the petitioner to prove the allegations of ownership, and it was proper for the trial judge to refuse to rule that as against the respondent he had a good title to certain of the lands.

An offer by the petitioner at the trial of the proceedings above described to prove that the land was purchased with his money and that the title to some of it was taken in the name of his wife for convenience and as trustee for him and that they bought the land and operated it with a unity of purpose, properly was excluded as reciting no evidence to warrant a finding that he had such an interest in the land standing in the name of his wife that he could require her to convey it to him, or that he was entitled to maintain the petition as the real owner of the land.

At the trial of a petition by a husband and wife for damages due to a taking of land under St. 1906, c. 317, where the petition contained an allegation that all land that stood in the name of the husband was held for the benefit of the wife and asked that all damages be awarded to and for her benefit, the petitioners offered to prove a common ownership of land on both the north and the south sides of a river, and that, by reason of an understanding as to title, the husband had control of this land, thus making the property more valuable for a water supply or water power. It appeared that, at the time of the taking, the husband held the legal title to but one undivided half of the land on the north side of the river and to none on the south side, while the wife's land was on the south side. It further appeared that neither the husband nor the owner in common with him of the land

on the north side of the river could divert the water for a water supply or water power without the consent of the owner of the other half, even if the husband had title to the land on the south side. The evidence offered was excluded. *Held,* that the exclusion was proper.

At the trial of the petition of the husband and wife above described, where it did not appear that the property of either was an indispensable part of a unit or system of water supply, it was proper for the trial judge to refuse to rule that each petitioner was entitled to recover damages for his proportionate share of the land and waters considered as an indispensable part of a unit or system of water supply.

At the trial of the petition above described, it was proper for the judge to refuse to rule that the value of the petitioners' land and waters for any special purpose might be considered with a view to ascertaining what the property was worth in the market for any use for which it would "bring the most": the petitioners' damages were not to be measured by the value of the property for special or possible purposes, but by its market value in view of all purposes to which it was naturally adapted.

At the trial of the petition above described, the judge properly declined to rule that, where land borders on a natural stream, each of the proprietors owns the fee to the thread of the stream and has the right to the natural flow of the stream and to the benefit of it as it passes through his land for all the useful purposes to which it may be applied.

At the trial of the petition of the husband and wife above described, it appeared that the petitioners did not own any of the land described in the petitions jointly or as tenants in common each with the other, although the petition was in such form that it might have been maintained if a joint title had been shown. It appeared in evidence that the ownership was in severalty, but no objection to maintaining the petitions by both petitioners was raised. *Held,* that

(1) It was proper to refuse to give rulings based upon the contention that the real estate standing in the name of the wife was really the property of her husband and that he and she were entitled to recover damages as though they owned the property jointly;

(2) Each petitioner was entitled to damages in severalty for the taking of the property which he or she owned.

It was proper to exclude at the trial of the petition above described evidence to show the comparative cost of developing and maintaining a water and power supply between that supply and other similar sources of supply, or to show the cost to the respondent of development and maintenance of its water supply since the taking, or to show the income received from it by the respondent.

The fact that land outside the taking was posted by the board of health or that such other lands were brought within the provisions of R. L. c. 75, § 124, and other laws and rules regulating contamination of water used as a city supply did not entitle the petitioner to damages in the proceeding above described.

A contention at the trial above described that compound interest should be allowed properly was overruled.

Under the provisions of St. 1906, c. 317, § 7, requiring all proceedings

for the recovery of damages to be brought within two years after the right of action accrued, but allowing no damages for water taken until actual diversion, an exception at the trial of such a proceeding to the ordering of a verdict for the respondent must be overruled when the record shows that the taking was on January 21, 1907, and that the petition was filed in 1911, and nothing appears to justify a finding that the petition was brought within the period of limitation fixed by the statute.

The mere fact that, at the trial above described, the petitioner's witnesses had been permitted to testify that the property in question was valuable as a source of water supply did not make erroneous an exclusion of further testimony of the value of the property for such special purpose.

At the trial of a petition under the statute above described, it appeared that the petitioner was an owner in common of one undivided half of the property described in the petition, and that the owner of the other undivided half was not a party to the proceeding, and there was no evidence to justify a finding that the petitioner had authority to represent the owner of the other half interest in the land. The judge instructed the jury that they should assess damages as though the petitioner were the sole owner of the entire tract stating that he would be obliged to account to the coöwner for one half of the amount of the damages assessed for the taking thereof. *Held,* that

(1) A tenant in common might recover damages for injuries to his estate without joining the other tenant in common;

(2) It was proper for the judge to require the jury to assess damages as though the petitioner were the sole owner of the entire tract;

(3) The judge erred in allowing the jury to award to the petitioner the whole of the damages so assessed and in ruling that he would be obliged to account to the cotenant for one half of the amount, and in refusing to rule that the petitioner was entitled to recover only those damages which were caused by the taking of one undivided half of the land.

The respondent at the trial of the petition of but one tenant in common above described conceded that the petitioner was entitled to one half of the value of the whole land taken, and this court, under G. L. c. 231, § 124, ordered judgment entered for one half of the verdict found by the jury.

Two PETITIONS, filed in the Superior Court on January 20, 1909, and October 16, 1911, for the assessment of damages due to takings by the respondent described in the opinion.

Proceedings in the Superior Court and verdicts returned at the trial before *Walsh,* J., are stated in the opinion. Both parties alleged exceptions.

Material portions of St. 1906, c. 317, § 7, which relate to assessment of damages for the taking authorized by that statute, are as follows:

"The said city shall pay all legal damages suffered by any person in his property by the taking of any property as herein provided, or by any other act occasioning legal damage done by it under the authority hereof; but no damages shall be recoverable for the taking of any water until such water is actually diverted. All such damages shall be ascertained and recovered in the manner provided by law when land is taken for the laying out of highways, and all proceedings for the recovery of such damages shall be brought within two years after the right of action accrues."

*J. P. Kirby*, for the respondent.

*L. C. Henin*, for the petitioners, submitted a brief.

SANDERSON, J.   These are two petitions in which the petitioners, who are husband and wife, seek damages for the taking by the city of Springfield on or about January 21, 1907, for the purposes of a water supply under the authority of St. 1906, c. 317, of land in Russell, Westfield and Granville, and of waters of the Westfield Little River, and its tributaries, at and above the designated point of diversion. They also seek to recover other damages to their property and expenses. A bill of exceptions was filed by the petitioners and another by the respondent.

The first petition was entered January 20, 1909, and the second October 16, 1911. The docket entries show that on November 14, 1913, the cases were referred to an auditor. On March 17, 1925, the petitioners filed a motion for stay of proceedings before the auditor to enable the court to determine the validity of the taking, and its jurisdiction under the petitions. The petitioners then requested the court to hear evidence in support of their contention that the taking was invalid. On June 6, 1925, the petitioner Vincent E. Barnes filed a motion for discharge of the auditor alleging several reasons therefor. On June 19, 1925, both motions and the requests to hear evidence as to the invalidity of the taking were denied by a judge who ruled that it was not open to the petitioners to contend in these proceedings that the taking of the property set forth in the petitions was invalid and illegal. Exceptions saved to these orders and

rulings were never perfected by the allowance of a bill of exceptions by the judge who made the rulings. On June 15, 1926, the auditor's report was filed. The judge who allowed the present bill of exceptions presided at the trial of the case with a jury and also passed upon certain motions filed in 1928 which are made a part of the bill of exceptions. Shortly before the case went to trial the petitioners filed several motions alleging that the taking was illegal and void, and that the court had no jurisdiction to assess damages under St. 1906, c. 317, § 7, and requesting that the hearings on the petitions be suspended until the Supreme Judicial Court had determined the validity of the taking and the jurisdiction of the Superior Court. These motions were denied April 2, 1928, and on the same date the cases went to trial. On April 12, 1928, the petitioners filed a motion in both cases that the report of the auditor be rejected and the auditor discharged, repeating their request for a continuance of the cases until this court should determine the validity of the taking and the jurisdiction of the Superior Court. This motion was denied. On April 23, 1928, they filed another motion asking, in substance, for a suspension of the trial and a report of the case to determine the validity of the taking and the jurisdiction of the court. This motion was denied.

On May 22, 1928, a verdict on the petition first brought was rendered assessing damages for Vincent E. Barnes in the sum of $13,680.99 and for Ellen L. Barnes in the sum of $22,801.64. In the second case, subject to the petitioners' exceptions, a verdict for the respondent was returned by direction of the court.

The ruling of a judge of the Superior Court made in 1925, to the effect that the petitioners are precluded from contending in these proceedings that the taking of the petitioners' property set forth in the petition was invalid and illegal, as well as his orders on the motions then decided, the exceptions to which were not perfected, cannot now be questioned. See Common Law Rule 51 of the Superior Court (1923); *Brooks* v. *Shaw*, 197 Mass. 376; *Cohen* v. *Edinberg*, 225 Mass. 177, 181; *Cutter* v. *Cooper*, 234 Mass. 307, 314. But if we assume that notwithstanding the rulings made in 1925 the

petitioners could raise the same questions at a subsequent stage of the case, no error of law appears in the ruling that in these proceedings they are precluded from contending that the taking was invalid or illegal.

The petitioners are seeking to have a jury assess their damages in accordance with the provisions of the act authorizing the taking. By the allegations in the petition they have admitted for the purposes of these proceedings the taking, its validity, the regularity of the proceedings, and the constitutionality of the act. G. L. c. 231, § 87. *Flagg* v. *Worcester*, 8 Cush. 69, 71. *Walcott* v. *Kimball*, 13 Allen, 460. *Snowling* v. *Plummer Granite Co.* 108 Mass. 100. *Pinkham* v. *Chelmsford*, 109 Mass. 225. *Murray* v. *County of Norfolk*, 149 Mass. 328. *Preston* v. *Newton*, 213 Mass. 483. *Sullivan* v. *Ashfield*, 227 Mass. 24. The maintenance of the petition is based upon allegations of regularity and legality in the taking. In *Moore* v. *Sanford*, 151 Mass. 285, *Greenfield* v. *Burnham*, 250 Mass. 203, *Radway* v. *Selectmen of Dennis*, 266 Mass. 329, the validity of acts of public boards was tried by a bill in equity. In *Bogigian* v. *Commissioner of Corporations & Taxation*, 248 Mass. 545, the petitioner, who was seeking an abatement of a tax, contended that the statute was unconstitutional in requiring a nonresident to pay his tax before he could have an abatement. The court said that the petitioner was seeking a remedy given by the particular statute and "he asserts a right derived solely from the statute. He cannot, therefore, at the same time urge the unconstitutionality of the enactment under which he seeks his remedy. 'If he takes advantage of the protection given by the statute for a review . . . he can enjoy that protection only upon the terms set out in the statute.'" The exceptions to the ruling excluding all evidence of the petitioners that the respondent had failed or neglected to comply with the provisions of the act under which the taking was made and to the ruling that they should not argue that the taking was void must be overruled.

There was no valid objection to the jurisdiction of the court. St. 1906, c. 317, § 7, provides that all damages under the act shall be ascertained and recovered in the manner pro-

vided by law when land is taken for the laying out of highways. By the statutes then in force, the Superior Court was expressly given jurisdiction to hear and determine petitions for the assessment of damages for land so taken. R. L. c. 48, § 109. *Moore* v. *Sanford, supra,* at page 287. The taking of land and water for a municipal water supply is a taking for a public purpose justifying the exercise of the right of eminent domain. *Lumbard* v. *Stearns,* 4 Cush. 60. The only ground upon which the petitioners have based their contention that the Superior Court was without jurisdiction to hear the petitions is that the alleged taking was illegal and invalid. For the reasons already stated the petitioners are bound in these proceedings by their allegations, and the court must assume for the purposes of this decision that the taking was valid. The judge was right in so ruling. His refusal to hear evidence in support of the motion, filed ten days after the trial began, relating to the auditor and his report discloses no reversible error.

The excepting party has the burden of showing error. In the case at bar there is no statement in the petitioners' bill of exceptions that it contains all the evidence relating to the various questions raised nor that it contains all parts of the charge relating to the subject matter referred to in the parts to which exceptions were taken. *Barnes* v. *Loomis,* 199 Mass. 578. *Evans* v. *County of Middlesex,* 209 Mass. 474. *Farnum* v. *Ramsay,* 231 Mass. 286, 290. *Morgan* v. *Morgan,* 267 Mass. 388. Arguments based upon documents, rulings, statements of fact or of evidence which do not appear to have been made a part of the bill of exceptions cannot be considered. All exceptions not argued must be treated as waived, notwithstanding the statement in the petitioners' brief that they do not waive any of those which have not been argued. *Silverman* v. *Rothfarb,* 247 Mass. 456.

The orders denying motions for continuance and for suspensions of the hearings must stand. They were filed many years after the first petition was entered and were addressed to the discretion of the court. *Noble* v. *Mead-Morrison Manuf. Co.* 237 Mass. 5, 16. See *Noyes* v. *City Council of Springfield,* 116 Mass. 87.

There is no requirement that the jurors called to try the case take an oath to support the Constitution of the United States or the oath referred to in the Sixth Amendment to the Constitution of this Commonwealth.

Within the area of the taking there appears upon a plan introduced by the petitioners a lot designated "E. L. Barnes 49 acres." The material facts concerning this parcel so far as the bill of exceptions discloses are that a warranty deed purporting to convey it to the petitioner Ellen L. Barnes in 1901 was executed by Mary Spelman and her husband, Edward Spelman, who joined therein to convey his rights as tenant by the curtesy; that Vincent E. Barnes paid off a mortgage on the property and gave a check for the balance of the purchase price to Mary Spelman's son for her; that Barnes later discovered a "cloud" on the title and spoke to Edward Spelman about it who said that he did not claim any interest in the land. He executed a quitclaim deed to Ellen L. Barnes, dated February 6, 1907, conveying all his right, title and interest in the land described in the deed of Mrs. Spelman. This deed was offered in evidence and excluded by the judge subject to the petitioners' exception. They also excepted to the rulings that the petitioners had no title to this forty-nine acre lot and that it was not to be considered by the jury. The bill of exceptions does not state the ground of these rulings and it may be that the evidence disclosed that neither of the Spelmans had any title to the property, or that evidence justifying the ruling was introduced relating to the deeds themselves or their execution. But if it be assumed that Edward Spelman had title to the property and conveyed it to Ellen L. Barnes by the deed dated February 6, 1907, the ruling excluding the deed was right.

The fact that Edward Spelman joined in the first deed to release curtesy in his wife's real estate created no title to the fee in the grantee by estoppel. *Bruce* v. *Wood,* 1 Met. 542. *Wales* v. *Coffin,* 13 Allen, 213, 216, 217. *Pierce* v. *Chace,* 108 Mass. 254, 258. *Anttila* v. *A. E. Lyon Co.* 222 Mass. 126. The rights of the parties are determined by the state of the title at the time of the taking; and a deed of property delivered after the taking does not operate as an assignment of the

claim for damages. *Patten* v. *Fitz*, 138 Mass. 456, 457. *Webster* v. *Lowell*, 139 Mass. 172. *Howland* v. *Greenfield*, 231 Mass. 147, 148. See *Glazier* v. *Everett*, 224 Mass. 184, 188.

The judge ruled that the votes on January 21, 1907, divested the petitioners of and took from them all their right and title in and to the waters of Westfield Little River and its tributaries and the real estate described in the votes. The petitioners contend that under the taking, if valid, title to the property did not pass until April 16, 1907, when, they assert, a description and plan were first filed in the registry of deeds. In support of this contention they have attached to their brief what purports to be a recorded copy of a plan of the area taken. No such plan is referred to in the bill of exceptions, and, so far as appears, no contention was made at the trial that the taking became effective on the later date. The petitioners allege in their petitions that the taking was made on January 21, 1907. Documents attached to the brief but not made a part of the bill of exceptions cannot be considered by the court for any purpose. The act under which the taking was made required that a plan drawn to scale of land taken be filed and recorded in the registry of deeds for the county in which the land is situated, within ninety days "after taking." It appears from the bill of exceptions that votes taking the waters and land were recorded in the registry of deeds on January 21, 1907, the date on which they were passed. The first petition filed alleges that the plan annexed to it is a plan of the petitioners' land taken as recorded in the registry of deeds and served by copy on the petitioners. Upon this plan are the words "Map to accompany Description of Land, included in Taking by Springfield Board of Water Commissioners Jan. 21, 1907. Scale 1 inch = 800 feet. Land taken enclosed within tinted Line."

St. 1906, c. 317, § 7, provides that all damages under the act shall be ascertained and recovered in the manner provided by law for the laying out of highways. In this law as then enacted there was no provision to the effect that the date of filing or recording the description or plan should be the time when the taking occurs. In this respect the act differs from the provision of the present eminent domain

statute, G. L. c. 79, § 3 (first enacted as § 3 in a new chapter 48A added to the Revised Laws by St. 1918, c. 257, § 187) and of special acts which fix the time of filing and recording of a description of the taking as the time when title shall vest. The requirement of St. 1906, c. 317, § 6, for filing and recording a description of the property rights taken, and a plan of the lands taken, is in its legal effect like the provisions of St. 1846, c. 167, § 1, concerning which the court said in *Moore* v. *Boston*, 8 Cush. 274, 276: ". . . the taking of the land, and the filing of a description of it in the registry of deeds, are two separate and distinct acts. The former must precede the latter . . . . The act of taking is to be first accomplished, and after it is done, the evidence of it, in the form of a description, is to be filed in the registry of deeds. Such seems to be the natural import of the language of the statute." *Edmands* v. *Boston*, 108 Mass. 535, 547. *Northborough* v. *County Commissioners*, 138 Mass. 263. *Beckford* v. *Needham*, 199 Mass. 369. The cases of *Watertown* v. *Dana*, 255 Mass. 67, 72, and *Radway* v. *Selectmen of Dennis*, *supra*, were controlled by the provisions of G. L. c. 79. The rights of the parties in the case at bar having been fixed as of January 21, 1907, the day of the taking, all deeds of a later date offered in evidence were properly excluded.

A plan introduced by the petitioners shows within the area of the taking a lot designated "Spellman 60 acres," apparently designated on the plan as located in the town of Russell. The judge left to the jury the question whether either petitioner had title to this lot, and instructed them, in substance, that if they found that the petitioner Ellen L. Barnes held the title, no land in the town of Russell was included; that any conveyance of that lot did not convey land in the town of Russell. "It may go to the boundary line of the town of Russell but the land itself does not comprise, however it may be described, any land that is in the town of Russell." So far as the bill of exceptions discloses no evidence was introduced to prove that the plan was accurate nor why the lot came to be designated or outlined as shown on the plan. A certified copy of the court record shows that the jury found that neither petitioner had title to this lot. Upon the record

the court cannot say that there was error of law in the ruling made concerning this lot. When the record is so meagre that this court is unable to determine whether or not the trial judge erred in his rulings, the exception must be overruled. *Dagis* v. *Walworth Manuf. Co.* 213 Mass. 524, 528. *Freedman* v. *Lipman,* 223 Mass. 471.

The failure of the respondent to file an answer does not estop it from contesting the petitioners' title. Section 22 of the new chapter 48A, added to the Revised Laws by St. 1918, c. 257, § 187, (see now G. L. c. 79, § 22,) first required an answer to be filed in this kind of action, and created a new section relating to procedure. *Nicklas* v. *New Bedford,* 250 Mass. 471, 475. The statement in the vote of taking that the owners of the real estate so far as known are Vincent E. Barnes and Ellen L. Barnes does not create such estoppel. There is nothing to show that the petitioners have acted upon or changed their position in reliance upon this statement in the instrument of taking or that they would have been justified in so doing. *Anttila* v. *A. E. Lyon Co.* 222 Mass. 126, 128. *Washburn* v. *Miller,* 117 Mass. 376, 377, 379. It appears from the bill of exceptions that the parties tried out the question of the petitioners' title to the land taken. The burden was on them to prove the allegations of ownership in their petitions, and there was no error in the refusal to rule that as against the respondent they had a good title to the land described in the deeds referred to as Blakesley and Quance deeds. The petitioner Vincent E. Barnes offered to prove that he was the real owner of the land, the record title to which was in his wife. The offer contains no evidence to warrant a finding that he had such an interest in the land standing in the name of his wife that he could require her to convey it to him. The mere fact that it was purchased with his money and that the title to some of it was taken in the name of his wife for convenience and as trustee for him is not enough to enable him to recover damages for the taking. The fact, if it be a fact, that they bought the land and operated it with a unity of purpose, would not justify the recovery of damages by him as though he had the entire title to the land on both sides of the river. In the second petition filed,

the petitioners alleged that all land that stood in the name of Vincent E. Barnes was held for the benefit of Ellen L. Barnes, and asked that all damages be awarded to and for her benefit. They were bound by this allegation in the absence of any amendment of the petition. *Snowling* v. *Plummer Granite Co., supra.* The offer was made to prove a common ownership of land on both sides of the river, and that by reason of an understanding as to title Vincent E. Barnes had control of this land, thus making the property more valuable for a water supply or water power. But this contention could not be sustained, because on January 21, 1907, Vincent E. Barnes held the legal title to but one undivided half of the land on the north side of the river, and to none on the south side, while his wife's land was on the south side. The damage of neither petitioner could be enhanced by proof of an oral understanding that the husband was the real owner. The evidence was rightly excluded for the further reason that at the time of the taking neither Vincent E. Barnes nor the owner in common with him of the land on the north side of the river could divert the water for a water supply or water power without the consent of the owner of the other half, even if Vincent E. Barnes had title to the land on the opposite bank. *Muskeget Island Club* v. *Prior*, 228 Mass. 95.

Request 39, to the effect that each petitioner was entitled to recover damages for his proportionate share of the land and waters considered as an indispensable part of a unit or system of water supply, was properly denied. It did not appear that the property of either was an indispensable part of a unit or system of water supply. Each was entitled to recover the fair market value of his land, and evidence of its value for the special purpose of a water supply might properly be excluded. *Sargent* v. *Merrimac*, 196 Mass. 171, 174.

The judge declined to rule in accordance with the petitioners' thirty-seventh request that the value of the petitioners' land and waters for any special purpose may be considered with a view of ascertaining what the property is worth in the market for any use for which it will bring the most. The petitioners' damages are not to be measured by

the value of the property for special or possible, purposes but by its market value in view of all purposes to which it was naturally adapted. *Moulton* v. *Newburyport Water Co.* 137 Mass. 163, 167. In *Sargent* v. *Merrimac, supra,* the market value was said to be "made up of the value in the market of the land apart from its special adaptability for water supply purposes, plus such sum as a purchaser would have added to that value because of the chance that the land in question might be some day used as a water supply."

The judge declined to rule in accordance with the thirty-sixth request that, where land borders on a natural stream, each of the proprietors owns the fee to the thread of the stream and has the right to the natural flow of the stream and to the benefit of it as it passes through his land for all the useful purposes to which it may be applied. This request fails to take into consideration the rights of others who have common rights in the stream. *Watuppa Reservoir Co.* v. *Fall River,* 147 Mass. 548, 554.

The request numbered twenty-one is based upon the contention that the real estate standing in the name of Mrs. Barnes is really the property of her husband and that he and she are entitled to recover damages as though they owned the property jointly. The petitioners did not own any of the land jointly or as tenants in common each with the other. Whatever either owned he owned in severalty so far as the other was concerned. Under the petitions, a joint title might have been shown. When it appeared in evidence that the ownership was in severalty no objection to maintaining the petitions by both was raised, and none is now urged. Each is entitled to damages in severalty for the taking of the property which he owned. *Boston Chamber of Commerce* v. *Boston,* 195 Mass. 338, 346. G. L. c. 231, § 3, and G. L. c. 79, § 23. No error appears in these rulings of the judge as to the right of each petitioner to his separate damages nor in the rulings as to the right of each owner to make use of the stream.

The evidence to show the comparative cost of developing and maintaining a water and power supply between this and other similar sources of supply, and to show the cost to the

respondent of development and maintenance of its water supply since the taking, and also to show the income received from it by the respondent, was properly excluded as immaterial. *Maynard* v. *Northampton*, 157 Mass. 218. *Sargent* v. *Merrimac*, 196 Mass. 171, 178.

There is nothing in the record to show that the evidence excluded as to land outside the taking was relevant or material. No damages could be recovered because land outside the taking was posted by the board of health or because such other lands were brought within the provisions of R. L. c. 75, § 124, now G. L. c. 111, § 167, and other laws and rules regulating contamination of water used as a city supply. So far as appears the only damage to such other land of which complaint was made was the result of subjecting it to such regulations. *Commonwealth* v. *Sisson*, 189 Mass. 247, 251. There was no error in the part of the charge concerning this matter which appears in the record.

The contention that compound interest should be allowed cannot be maintained. *Arnold* v. *Maxwell*, 230 Mass. 441.

The exception to the directed verdict on the second petition filed has no merit. The petition was filed October 16, 1911. Section 7 of the act authorizing the taking requires all proceedings for the recovery of damages to be brought within two years after the right of action accrued, but allows no damages for water taken until actual diversion. There is nothing in the record to justify a finding that this petition was brought within the period of limitation fixed by the statute.

The exclusion of testimony of the value of the property as a source of water supply was not erroneous. The fact that the petitioners' witnesses had been permitted to testify that the property was valuable for this purpose did not require the judge to admit further evidence as to its value for this special purpose.

All of the petitioners' exceptions argued, including those not specifically mentioned, have been considered and in none of them do we find reversible error.

The only question raised by the respondent's exceptions relates to the assessment of damages, and is contained in the

refusal of the judge to rule, "The petitioner Vincent E. Barnes is entitled to recover only those damages which were caused by the taking of one undivided one half of the land on the north side of the river," and to the ruling given in the following language: "The petitioner, Vincent E. Barnes, is the owner of only one undivided one half interest in the tract on the north side of the river. But in assessing damages you will assess them as though he were the sole owner of the entire tract. He will be obliged to account to the other co-owner for one half of the amount of the damages assessed for the taking thereof."

It does not appear that any exception was taken to the statement of the judge that Vincent E. Barnes is the owner of only one undivided half interest in the tract on the north side of the river. It is stated in the respondent's bill of exceptions that the land on the north side of the river was the only land within the taking to which Vincent E. Barnes had any title; that the only title of record in Vincent E. Barnes was to one undivided half of this land; that the land was wild and uninhabited, and that there was no evidence of acts of occupation upon it. He is limited in his rights to the title gained by conveyances to him. *Farwell* v. *Rogers*, 99 Mass. 33, 34. *Murphy* v. *Commonwealth*, 187 Mass. 361, 375. If it be assumed that the owner of the other undivided half of the land on the north side of the river has made no claim for damages, this gives Barnes no additional rights. There is no evidence to justify a finding that Barnes had authority to represent the owner of this other half interest in the land. Barnes can recover only on the strength of his own title and for damages to his own property. His damages are based upon the value of that of which he has been deprived and not upon the value to the respondent of what it has received. *Edmands* v. *Boston*, 108 Mass. 535, 536, 544. *Moulton* v. *Newburyport Water Co.* 137 Mass. 163. *Boston Chamber of Commerce* v. *Boston*, 195 Mass. 338. The facts in *Hawkins* v. *County Commissioners*, 2 Allen, 254, distinguish that case from the case at bar.

Until changed by statute all tenants in common were required to join in actions for injuries to the common estate.

*Merrill* v. *Berkshire*, 11 Pick. 269, 274. *Gilmore* v. *Wilbur*, 12 Pick. 120. Since the enactment of Rev. Sts. c. 24, §§ 48–53, a tenant in common may recover damages for injuries to his estate without joining the other tenants in common. *Dwight* v. *County Commissioners*, 7 Cush. 533. *Boston* v. *Robbins*, 121 Mass. 453, 455. St. 1905, c. 266 (now incorporated in G. L. c. 231, § 3, and G. L. c. 79, § 23) provides that tenants in common may join in an action for injury to real or personal property, or that any one or more may sue for his or their damage. Rev. Sts. c. 24, § 50, made provision for the apportionment of damages among the several parties entitled thereto, when there is more than one interest in the property taken or damaged. This provision has been re-enacted in substantially the same form in Gen. Sts. c. 43, § 55, R. L. c. 48, § 22, and G. L. c. 79, § 29. Through all of these years the provision for apportionment of damages has required that the jury shall first find and set forth in their verdict the total amount of damages sustained by the owners of the property, estimating the same as an entire estate and as if it were the sole property of one owner in fee simple, and then apportion such damages among the several parties whom they find to be entitled thereto, in proportion to their several interests and to the damages sustained by them, respectively, and set forth such apportionment in their verdict.

The part of the ruling requiring the jury to assess damages as though Vincent E. Barnes were the sole owner of the entire tract was right. *Edmands* v. *Boston*, 108 Mass. 535, 544, *Burt* v. *Merchants' Ins. Co.* 115 Mass. 1, 15, 16, *Cornell-Andrews Smelting Co.* v. *Boston & Providence Railroad*, 209 Mass. 298, 304; but the judge erred in allowing the jury to award to him the whole of the damages so assessed and in ruling that he would be obliged to account to the other cotenant for one half of the amount. The judge also erred in refusing to give the respondent's request that the petitioner, Vincent E. Barnes, is entitled to recover only those damages which were caused by the taking of one undivided half of the land on the north side of the river. Under the instructions given the sum awarded to Vincent E. Barnes was the damage

to the whole property, of which he owned one undivided half part. The respondent concedes that the plaintiff's damage is one half the value of the whole. The nature of the title of each owner of one undivided half interest in a parcel of real estate is such that the value of the interest of either as matter of law cannot exceed one half the value of the whole. If both tenants in common had joined, the jury, after estimating the value of the entire tract as though owned by one person, would have been required to award to each, one half of the sum so assessed.

By G. L. c. 231, § 124, this court is given authority to direct the entry of such judgment as shall accord with its determination "if satisfied that it has before it all the facts necessary for determining the question in dispute." All necessary facts for determining the rights of the parties on this issue have been found by the jury, and although the respondent's exception must be sustained, a new trial is not necessary, but judgment is to be entered for Vincent E. Barnes as upon a verdict for one half the sum found for him. *Zink* v. *Foss,* 221 Mass. 73. *Matthews* v. *New York Central & Hudson River Railroad,* 231 Mass. 10, 19. *Kaminski* v. *Fournier,* 235 Mass. 51. *Stebbins* v. *North Adams Trust Co.* 243 Mass. 69, 76.

> *Petitioners' exceptions overruled.*
>
> *Respondent's exceptions to the verdict for Vincent E. Barnes sustained.*
>
> *Judgment is to be entered for Vincent E. Barnes as upon a verdict for $6,840.50, and for Ellen L. Barnes on the verdict.*