**UNITED STATES of America,
Plaintiff, Appellee,**

v.

**79.31 ACRES OF LAND, More or Less, SITUATED IN THE TOWNS OF TRURO, WELLFLEET AND EASTHAM, County of Barnstable, Commonwealth of Massachusetts, et al., Defendants, Appellees.**

**Ernest E. Tesson, et al., Defendants, Appellants.**

**No. 83–1006.**

United States Court of Appeals, First Circuit.

Argued June 10, 1983.

Decided Sept. 15, 1983.

John D. Hallisey, Orleans, Mass., for Ernest E. Tesson and Katherine L. Tesson.

William A. White, Jr., Boston, Mass., with whom Cornelius J. Moynihan, Jr., and Peabody & Brown, Boston, Mass., were on brief, for defendant, appellee Howard K. Snow.

Harry Sarkis Terkanian, Wellfleet, Mass., for defendants, appellees Julia B. Moore and Polly A. Thomas.

Before CAMPBELL, Chief Judge, BOWNES, Circuit Judge, and TORRUELLA,* District Judge.

LEVIN H. CAMPBELL, Chief Judge.

This is an appeal from a final judgment in a condemnation action filed by the United States of America on January 8, 1974. The land in question ("locus") is Cape Cod National Seashore Tract 25W–5881, a 4.1 acre parcel of wooded upland on Myrick's Island. Three parties originally claimed ownership of the parcel: Ernest E. and Katherine L. Tesson ("Tessons"); Howard K. Snow ("Snow"); and Julia B. Moore and Polly A. Thomas ("Moore et al."). Early in the proceedings Moore et al. entered into a stipulation with Snow, by which Moore et al. would not contest Snow's claim in exchange for 20 percent of Snow's eventual recovery. Snow's claim of ownership was based on a 150-year unbroken chain of title in the locus. The Tessons based their claim on two grounds: a missing, unrecorded deed to the locus; and adverse possession of the locus.

A special master was appointed pursuant to Fed.R.Civ.P. 53 and three days of hearings were held. The undisputed evidence placed title to the locus in Newell B. Rich at the date of his death, July 12, 1901. The master found that Newell B. Rich's two children, Benjamin S. Rich and Addie M. Rich, each inherited a one-half interest in the locus, while his widow, Mary Adeline Rich, took no interest under the contemporary law of intestate succession. The master found an unbroken chain of title from Benjamin S. Rich to Snow. The master rejected the Tessons's claim based on a missing deed from "Adline Rich" to Austin E. Dyer, who purportedly deeded the locus to the Tessons. The master also rejected the Tessons's claim of adverse possession.

The master recommended an award of one-half of the total compensation to Snow based on his title showing, and one-half of the compensation to Moore et al. based on their stipulation with Snow.[1] The district court approved the master's report on October 27, 1981 and subsequently reaffirmed the report on January 12, 1982. Judgment was entered on July 1, 1982. Tessons now appeal from the award of full compensation to Snow and Moore et al.

■ When, as in the instant appeal, the federal courts are presented with questions of ownership of condemned land, it is appropriate for them to look to state law for resolution of the dispute.[2] *United States v.*

---

* Of the District of Puerto Rico, sitting by designation.

1. This fifty-fifty split was not in accord with the stipulation, but Snow and Moore et al. subsequently entered into another stipulation splitting the entire award eighty-twenty in accordance with their original agreement.

2. Federal, rather than state, law might apply if the question presented were different. *See, e.g., Washington Metropolitan Area Transit Authority v. Two Parcels of Land in Fairfax County,* 569 F.2d 816 (4th Cir.1978) (amount of compensation); *United States v. Certain Interests in Property in Champaign County,* 271 F.2d 379 (7th Cir.1959), *cert. denied,* 362 U.S.

*Certain Property Located in Manhattan,* 306 F.2d 439 (2d Cir.1962); *Tyson v. Iowa,* 283 F.2d 802 (8th Cir.1960); *United States v. 818.76 Acres of Land,* 310 F.Supp. 210 (W.D.Mo.1969). We therefore look to the law of Massachusetts in deciding the parties' property interests in the locus.

■■■ Upon the death of Newell B. Rich, his children, Benjamin and Addie, became cotenants through intestate succession, each taking an undivided one-half interest in the locus. *Attorney General v. Clark,* 222 Mass. 291, 110 N.E. 299 (1915). There is no right of survivorship to a tenancy in common and each tenant can freely alienate his or her interest in the property. *See* 2 *American Law of Property* § 6.5 (A. Casner ed. 1952). Thus Benjamin Rich could pass only an undivided one-half interest in the locus to his heirs, successors and assigns. Since Snow produced no evidence showing acquisition of the other half interest in the property, he at most has a one-half undivided interest in the locus.

■■■ Massachusetts law clearly holds that a cotenant cannot be allotted more than his or her share of the compensation awarded in a condemnation proceeding. *Barnes v. City of Springfield,* 268 Mass. 497, 168 N.E. 78 (1929), *cert. denied,* 281 U.S. 732, 50 S.Ct. 246, 74 L.Ed. 1148 (1930); *Merrill v. Inhabitants of Berkshire,* 11 Pick. 269 (Mass. 1831). *See also Whitcher v. Town of Benton,* 48 N.H. 157 (1868). In *Barnes,* the Massachusetts Supreme Judicial Court held that the trial judge had erred in allowing a jury to allot an entire condemnation award to one cotenant, stating, "[t]he nature of the title of each owner of one undivided half interest in a parcel of real estate is such that the value of the interest of either as [a] matter of law cannot exceed one half the value of the whole." 268 Mass. at 514, 168 N.E. at 87.

Snow seeks to distinguish *Barnes* by hypothesizing that the reason for that decision was to protect the city from double liability and arguing that the United States needs no such protection here. We find this argument unpersuasive. The *Barnes* court did not even hint that it was concerned with double liability, and the tenor of its decision suggests that the protection of the absent cotenant was an equally probable motive of the court. Since Snow has proven no more than a one-half interest in the locus, the district court erred as a matter of law in awarding Snow full compensation. Snow can obtain only a one-half share in the full compensation and Moore et al. take twenty percent of that share by dint of the stipulation with Snow.

Snow argues that the case law requires an award of full compensation to the party with the strongest title. *See United States v. Certain Land Located in the County of Barnstable,* 314 F.Supp. 1372 (D.Mass.1970); *Andrew v. Nantasket Beach R. Co.,* 152 Mass. 506, 25 N.E. 966 (1890). These cases, however, are clearly distinguishable because the party seeking compensation was asserting a possessory claim to the entire property. Since no party presented a better claim to the property, the courts awarded the entire compensation to the possessory claimant. Snow bases his claim on a chain of title which clearly demonstrates the limited extent of his ownership and so "[h]e is limited in his rights to the title gained by conveyances to him." *Barnes,* 268 Mass. at 512, 168 N.E. at 86. Snow failed to submit any evidence of a legal or possessory interest in Addie M. Rich's undivided half interest and thus was merely the party with the best claim to Benjamin Rich's one-half interest.

■■■ The above cited cases in fact support the Tessons's appeal, since they are the only parties asserting a claim under Addie M. Rich's undivided one-half interest in the locus.[3] The Tessons hold a deed from the

---

974, 80 S.Ct. 1058, 4 L.Ed.2d 1010 (1960) (power of condemnation).

**3.** The Tessons claimed that "Adline" Rich deeded the locus to Austin Dyer, but they were ambiguous as to whether the deed came from

Newell Rich's daughter Addie or wife Mary Adeline (who had no interest in the locus). The Tessons's deed states that Austin Dyer received the locus from "Adline" Rich, and Paul Dyer, one of Austin's sons, stated that Austin purchased the locus "from, I believe, one Adline

Dyers conveying the locus and they undertook certain possessory acts toward the locus in the past. Although we agree with the master that these acts were insufficient to vest title by adverse possession, they constitute some evidence of ownership of Addie M. Rich's half interest. The question is whether this evidence is sufficient to warrant payment of compensation to the Tessons.

Compensation may sometimes be awarded to one in possession of land who fails to demonstrate legal ownership by valid deed or by adverse possession. "[I]t is generally held that in condemnation proceedings under authority of law, proof of possession under claim of title will be treated as *prima facie* evidence of ownership in fee, and will be sufficient to entitle the person in such possession to receive the compensation awarded for the land if no one showing a better title lays claim to it." 2 *Nichols on Eminent Domain* § 5.02[3] (3d ed. 1982) (emphasis in original). *See United States v. 350.925 Acres of Land,* 588 F.2d 430, 431 (5th Cir.1979); *United States v. Certain Land Located in the County of Barnstable,* 314 F.Supp. 1372 (D.Mass.1970); *Andrew v. Nantasket Beach R. Co.,* 152 Mass. 506, 25 N.E. 966 (1890). The cases applying this principle usually involve parties who have a defective deed and cannot mount a successful adverse possession claim, yet are the sole possessors of the condemned property. In *Barnstable,* the petitioner claimed through a broken chain of title, but had paid taxes and hunted on the premises.

There were no structures built and the petitioner had claimed title for only nine years. On that record, the court held that petitioner "as the sole claimant ... has shown sufficient estate and interest in the land taken to entitle her to an order awarding payment...." 314 F.Supp. at 1376.

In the instant case, the Tessons are the sole claimants to Addie M. Rich's half interest. They asserted ownership under a facially valid deed for 16 years prior to the institution of this action in 1974. The Tessons paid taxes on the locus for 15 years prior to 1974.[4] The acts of possession by the Tessons included planting trees, hunting deer and quail, taking walks, post-holing, and commissioning a survey. While these acts might not be persuasive indicia of possession were the area highly developed, it is a well established principle that "[t]he sufficiency of actual and open possession of property is to be judged in the light of its character and location." *United States v. Fullard-Leo,* 331 U.S. 256, 279, 67 S.Ct. 1287, 1298, 91 L.Ed. 1474 (1947) (footnote omitted). The land in question is undeveloped and is located within the boundaries of the Cape Cod National Seashore. Given this character of the locus, the Tessons's acts were sufficient to establish a possessory interest.[5]

The Tessons's claim of title, payment of taxes and possessory acts constitute prima facie evidence of ownership and, in the absence of any other claimants to Addie M. Rich's half interest, we hold that the Tes-

---

Rich, who my [sic] have been a widow." The master concluded that it was impossible on the evidence to find a common identity between Addie Rich and "Adline" Rich because Addie Rich was never a widow and was never referred to as "Adline" Rich in any official record. Since the alleged deed is missing and since memories fade, we cannot say that the apparent inconsistency in names necessarily renders the Tessons's claim null and void. They appear from the record to be asserting a good faith claim of ownership through Addie M. Rich.

**4.** The master found that the tax bills produced by the Tessons did not identify the locus. Under Fed.R.Civ.P. 53(e), we must accept the find-

ings of the master unless they are clearly erroneous. The undisputed testimony of the town assessor reveals payment of taxes on the locus from 1959 to 1976, and we therefore do not accept the master's finding. We find rather that the Tessons paid taxes on the locus for at least the years 1959 to 1976.

**5.** We should not be understood to hold that such acts would be enough to support an adverse possession claim in similar circumstances. Here, the Tessons are the *sole* claimants to Addie M. Rich's interest in the locus. We are not faced with a challenge by adverse possessors to another party's valid paper title and we consequently do not decide what evidence of possession would be sufficient in such a case.

sons are entitled to a share of the compensation.[6]

Accordingly we reverse the judgment below and remand to the district court. On remand Howard K. Snow shall be adjudged a one-half share of the compensation, to be shared with Polly A. Thomas and Julia B. Moore according to their stipulation with Snow. Ernest E. and Katherine L. Tesson shall be adjudged a one-half share of the compensation, but since the Tessons were not parties to the Stipulation for Judgment further proceedings are necessary so that either they can join in the stipulated sum or the value of the locus can be otherwise determined.

*So ordered.*

---

**6.** In the event the Tessons had failed to assert a sufficient prima facie claim, the other half of the compensation would have been left in the condemnation fund pending a sufficient title showing by another party or entry of a default judgment in favor of the government. *See* 42 U.S.C. § 258a.