Amy Carleton Brooks *vs.* William R. Quinn & another.

Barnstable.   December 10, 1928. — January 31, 1929.

Present: Rugg, C.J., Crosby, Carroll, Wait, & Sanderson, JJ.

*Way,* Private: location.

At the hearing in the Land Court of a petition for registration of a title to land and to an easement of a right of way as appurtenant thereto, it appeared that a tract of land bordering on the south on a river and including both the land of the petitioner and that of the respondent in 1835 was owned by one who then conveyed to the petitioner's predecessor in title a parcel back from the river together with the privilege of going to said land "threw gaits and bars with teams or otherwise and also to the river or shore with teams or otherwise threw gaits and bars"; that the petitioner's predecessor in title from 1835 to 1910 crossed the land, afterwards of the respondent, to and from the river whenever convenient, but by a way which until then was undefined; that in 1910 at the demand of the petitioner's predecessor in title, a defined way to the river was instituted by the respondent's predecessor in title over his land to the river; that such way did not prove practica-

ble and, when the respondent acquired title, he, with agreement of all parties interested, changed its location to that which the petitioner sought to have registered as appurtenant to his title; and that access from the land of the petitioner and his predecessor in title to the river had always been over the land of the respondent and his predecessor in title. The judge made no finding that the "gaits and bars," named in the deed of 1835, ever were located. The evidence before the judge was not reported. The title of the petitioner to the land and to the defined way was ordered registered. The respondent appealed. *Held,* that

(1) The mere fact, that, in 1910, one who then owned the land afterwards acquired by the petitioner, executed a mesne conveyance with "a right of way to the river and shore over the land of heirs of" the common grantor of the petitioner and of the respondent, referring to such common grantor's original deed of the petitioner's land, when such heirs then had no title to any land which the respondent and their predecessor in title ever owned, did not require the judge of the Land Court to find that the way given to the petitioner's predecessor in title was not over the land of the respondent, nor make incorrect as a matter of law a finding by the judge that such mesne conveyance did not constitute "at that time a selection by the predecessor of the petitioner of a way over land of the . . . heirs to the east";

(2) The claim of the petitioner was not affected by the fact that title to land of the respondent, adjoining on one side a strip of his land on which the petitioner claimed the right of way and also land of another owner on the other side of the strip, had been registered free from easements;

(3) Upon the findings by the judge, the title of the petitioner properly was ordered registered.

PETITION, filed in the Land Court on December 22, 1924, for the registration of the title to land in that part of Barnstable called Centerville, and, as appurtenant thereto, to a "right of way to Centerville River over land formerly of Everett W. Lewis, now of Helen Jones Quinn and William R. Quinn."

In the Land Court, the petition was heard by *Davis,* J. Material facts found by him and stated in his decision are stated in the opinion. He ordered a decree "for petitioner with an appurtenant right of way over a strip ten feet wide on the westerly side of the respondents' land." The respondents appealed, and in this court contended only "that the record shows error in the court's decree and that the petitioner did not sustain the burden upon her to prove the easement claimed."

The following sketch will make the descriptions in the opinion more readily understood.

CHEQUAQUET or CENTERVILLE RIVER

*J. T. Pugh,* for the respondents.

No argument nor brief for the petitioner.

CARROLL, J.   In this petition for registration of land with an appurtenant right of way across the respondents' land, there was a decree for the petitioner. After a rehearing on motion by the respondents, the decree was affirmed.

The judge of the Land Court found that the petitioner, who is the owner of land in Barnstable, on the northerly side of the State highway near the junction of Bumps River with the Chequaquet or Centerville River, asserts an appurtenant right of way across the respondents' land between the highway and the river; that in 1835, Wilson Crosby owned a tract of land, including all of the land in question, extending from Bumps River for a considerable distance to the east; that the present highway at that time had not been laid out; that by deed dated in 1835, Wilson Crosby conveyed to one Jagger a lot of land adjoining on the east the land now of the petitioner, together with the privilege of going to said land

"threw gaits and bars with teams or otherwise and also to the river or shore with teams or otherwise threw gaits and bars"; that in 1836, Wilson Crosby conveyed to Samuel Crosby the land now belonging to the petitioner, using the same phraseology and the same spelling as in the deed to Jagger.

The judge also found that on the Wilson Crosby land now owned by the respondents, lying between the Jagger and Samuel Crosby lots and the Chequaquet or Centerville River, there was a shipyard; that Jagger, a block maker, had a block shop on his lot, the blocks being used in rigging vessels built at the yard; that Samuel Crosby lived on his lot and carried on the shipyard until 1850; that the house of Wilson Crosby stood in the shipyard property; that while the shipyard was in operation there was free access from Samuel Crosby's land, now belonging to the petitioner, to the yard and the river, but the way was not defined on the ground.

It was further found that over the Wilson Crosby land to the east of the land now owned by the respondents there was a way to a landing; that this way was not in good condition and but little used; that there was also another road, "used for wood," which did not go to the river; that in 1856, Wilson Crosby sold to Enoch Lewis by warranty deed a portion of the land now of the respondents on which their house stands, and in 1872, sold to Cyrus Crosby, by warranty deed, land to the west of that owned by the respondents; that from 1850 to 1875 there was no appreciable amount of passing over the land between the Samuel Crosby and Jagger lots and the river, although the occupants of both lots having occasion to go to the river did so cross land now of the respondents whenever convenient.

It further was found that Enoch Lewis, in 1875, built a pier, on the house lot now of the respondents, to which boats were moored, and any one having occasion to go to this pier went across the land now owned by the respondents in the most convenient way; that there was a driveway to the east of where the respondents' house now stands leading to the barn, and this way was generally used to go to the shore; that the Enoch Lewis lot was conveyed in 1910 to one Theo-

dore, the house was improved and Mrs. Theodore objected to people using the driveway which was close to the house; that thereupon Everett Lewis, son of Enoch and the then owner of the remaining land, consisting of a strip one hundred feet wide between the Theodore land and the Cyrus Crosby land to the west, filled in a declivity between the road and the one hundred-foot strip, so that the owners of lots formerly of Jagger and Samuel Crosby could have access to the river along the easterly side of this one hundred-foot strip, and they thereafter used this way for that purpose; and that this change was made at their demand.

It appeared that in April, 1910, Augustus D. Ayling, who then owned the petitioner's land, conveyed it to one Merritt, who, in 1911, reconveyed to Ayling together with "a right of way to the river or shore over the land of heirs of Wilson Crosby deceased with teams or otherwise through gates and bars," referring to the deed of Samuel Crosby. The respondents, who had acquired title to the Theodore land, purchased from Everett Lewis, in 1922, the one hundred-foot strip by a deed in which the grantor reserved the right to cross from the State highway to the river over a strip ten feet wide along the westerly side thereof, for himself and his assigns, "and for any other parties who may have a right to do so." The filling done by Lewis in 1910 for access along the easterly side of the one hundred-foot strip did not make a practicable way. Although Lewis did not admit the existence of an easement, he knew about the earlier deeds and, as the judge of the Land Court found, "He was afraid, since all of the other Lewis property acquired from Wilson Crosby had been sold free from encumbrance and title both to the home lot now of the respondents to the east of the one hundred-foot strip, and to the Cyrus Crosby lot to the west had been registered free from easements, while he still held the only remaining and most available lot, that rights of way would be claimed thereover, and that he would get into litigation about it. He tried unsuccessfully to procure a release." When the respondents acquired the one hundred-foot strip, one of them made a new way along its westerly side from the street to

the river "for his own use and that of his neighbors, as a matter of courtesy if they had no rights, or as the way to be used if they had legal easements."

It was also found that access from Samuel Crosby's land to the river has always been over the respondents' land; that prior to 1910 the way was not defined except while the driveway to the east was in existence; that the use of this way was given up by arrangement with the owners of the former Jagger and Crosby lots and there was assigned instead a way across the easterly side of the one hundred-foot lot; that this way was later changed by the respondents, with the assent of Everett Lewis and those claiming an easement under the Wilson Crosby deeds, to the present location on the westerly side of the one hundred-foot strip.

It thus appears that there was a right of way appurtenant to the petitioner's land across the respondents' land which, before the year 1910, was undefined; that after the use of the driveway had been given up and the road to the east built, it was used for a time and then abandoned, and the way now in question along the westerly side of the respondents' lot was substituted. The questions involved were largely of facts, and the findings of the judge thereon must stand.

An undefined right of way by grant may be located by the parties, and a way once located may be changed by them. The location of the way in this manner was established on the findings of the judge. *Bannon* v. *Angier*, 2 Allen, 128. *Byrne* v. *Savoie*, 225 Mass. 338.

It is contended by the respondents that the right of way granted by the earlier deeds over the land of Wilson Crosby was to the east of the respondents' land. The one hundred-foot strip did not belong to the heirs of Wilson Crosby. He had sold it during his lifetime. On this point the judge found that the deed from Ayling to Merritt did not constitute "at that time a selection by the predecessor of the petitioner of a way over land of the Wilson Crosby heirs to the east"; and there was no evidence according to the findings of fact that such a way was acquiesced in by the owners of that land, or that there has been any user as appurtenant to the petitioner's land of any such way.

On these findings the petitioner is to prevail. There was no finding that the "gaits and bars" were ever located, and as we do not know what evidence there was before the trial judge we cannot reverse his findings. There was no misconstruction placed on the deed of Wilson Crosby as the respondents contend. The respondents assume that the "gaits and bars" defined the right of way. This assumption is disposed of by the specific findings that access from the land of Samuel Crosby "has always been over land now of the respondents" and that the tract belonging to Samuel Crosby was conveyed to him in 1836; that prior to 1910 the way was undefined and never was over any particular route except during the period when the driveway to the east of the Enoch Lewis house was in existence; that this way was given up, all the parties agreeing, and the way over the easterly side of the one hundred-foot lot substituted, which way was later changed by the respondents with the assent of the dominant owners and Everett Lewis to the present location on the westerly side of the one hundred-foot strip.

The registration of the land to the east of the one hundred-foot strip free from easements, whatever effect it had upon the rights of the petitioner so far as that particular lot was concerned, did not prevent the location of a way in the one hundred-foot strip at the demand of the owners of the Jagger and Samuel Crosby lots, as found by the judge.

We find no error in the rulings made. All of the questions raised by the respondents were settled by the original decision and the later decision after a motion for a rehearing.

*Order for decree affirmed.*