VINCENT E. BARNES & another *vs.* A. E. PECK & others.

SAME *vs.* CITY OF SPRINGFIELD.

SADIE B. KNOX *vs.* SAME.

VINCENT E. BARNES *vs.* ABNER E. PECK & another.

SAME *vs.* CITY OF SPRINGFIELD.

Hampden. November 17, 1932. — September 11, 1933.

Present: RUGG, C.J., CROSBY, PIERCE, & FIELD, JJ.

*Equity Jurisdiction*, Invalid taking by eminent domain. *Estoppel. Election. Res Judicata. Constitutional Law*, Due process of law, Eminent domain. *Municipal Corporations*, Officers and agents, Water supply, Electricity. *Statute*, Construction. *Eminent Domain*, Validity of taking, Necessity of taking, Description of land taken, Extent of taking, Trees, Damages, Notice, Conveyance of land subsequent to taking. *Damages*, For property taken or damaged under statutory authority. *Springfield.*

One, who sustained damages by reason of a taking by the city of Springfield by eminent domain under St. 1906, c. 317, on January 21, 1907, brought a petition for assessment of his damages under § 7 of the statute on January 20, 1909. It appeared that, immediately after the taking, the city had made entry upon lands with respect to which the taking was made and had expended large sums of money in the development of additions to its system of waterworks and that the water was used as supplementary to its other sources of supply. Hearings on the petition were held before an auditor for twenty days in December, 1913, and January, 1914, and then were suspended until 1923. The report of the auditor was filed in 1926. There was a trial by jury, and a verdict for the landowner for a considerable sum was rendered in 1928. At that trial he introduced evidence as to the value of his property for all uses. The case came to this court and rescript ordering judgment in his favor for a specified sum was sent in 1929. Final judgment in his favor in accordance with the rescript was entered and the amount of that judgment was tendered to him and was refused by him. In 1920 and 1926, respectively, he brought a suit in equity and an action at law for damages, based on allegations that the taking by the city was illegal and void. *Held*, that

(1) The commencement and prosecution to final judgment of the petition for assessment of damages in the circumstances disclosed precluded the landowner from contending in the suit in equity and the action at law that the taking was invalid;

(2) The principle of law, that a landowner, who wishes to contest the constitutionality of a statute or the regularity of the procedure under which his land appears to have been taken by eminent domain, is not obliged to select at his peril the correct remedy and is not barred from prosecuting a petition for the assessment of damages after he has failed to maintain proceedings attacking the validity of taking, was not applicable in the circumstances;

(3) The procuring of final judgment on the petition for assessment of damages must be held to have been a waiver of the landowner's right to maintain the suit in equity and the action at law, and to be an election to depend upon such petition.

The taking made as above described was valid.

It was provided in § 1 of St. 1906, c. 317, that the city of Springfield might take the waters of Westfield Little River and use the same "for any and all purposes for which said city is or may be authorized to use water; and may take and hold, by purchase or otherwise, any lands" which its board of water commissioners "may deem necessary for any of the purposes of this act . . . or for carrying out any of the powers and duties conferred by this act"; and by § 2 the city was empowered to make extensive constructions including buildings, tunnels and other structures as well as dams and reservoirs. *Held*, that the language empowering the city to take and use the waters for purposes for which it "is or may be authorized to use water" meant that such taking was not only for purposes for which authority specifically had been conferred but also for those purposes for which authority might thereafter be conferred by the Legislature.

After the passage of Spec. St. 1918, c. 163, the city of Springfield used the water of Westfield Little River, which it previously had used in part for the generation of electricity incidental to the construction of its waterworks system, for the generation of electricity, and the land for the installation of works, machinery and transmission lines, for the sale of the electricity so generated. *Held*, that

(1) Such use was within the power and authority granted by St. 1906, c. 317;

(2) The original taking under St. 1906, c. 317, included the right to use the water for the generation of electricity and the land for the installation of works, machinery and transmission lines for the sale of the electricity so generated;

(3) The judgment for the landowner in his original petition, above described, for assessment of damages under § 7 of St. 1906, c. 317, gave him damages for the taking of that right.

The development of electricity by a municipality for light, heat and power for the use of the general public is a function which may be conferred by a statute such as Spec. St. 1918, c. 163.

The circumstance, that Spec. St. 1918, c. 163, § 3, gave specific authority to the city as to taking by eminent domair lands and easements in furtherance of the powers therein conferred, did not constitute nor indicate a limitation on its rights to use lands already acquired by it under St. 1906, c. 317, for the purposes specified in Spec. St. 1918, c. 163.

The city of Springfield had a right to sell standing timber upon the land with respect to which it made takings under St. 1906, c. 317; and vendees of the timber from it acquired a good title.

Section 6 of St. 1906, c. 317, required that after taking any property the board of water commissioners of the city "shall notify the owner or owners thereof, if known to them." As to a certain parcel, the city used good faith in a wise but unsuccessful endeavor to ascertain the identity of the owner. A description of the land taken with a plan was filed in the proper registry of deeds. The owner was not notified and was ignorant of the taking for eighteen years, when he brought an action at law based on allegations that the taking was void. *Held*, that

(1) The words of the statute at most required the exercise of good faith and reasonable intelligence on the part of the city officers to ascertain the identity of, and to notify, the owners of land taken;

(2) In the circumstances, actual notice was not required, and the taking was not invalid for want of notice to the owner;

(3) The action could not be maintained.

FOUR BILLS IN EQUITY, filed in the Superior Court, the first and second on July 9, 1920, and on June 22, 1925, respectively, and the third and fourth on December 21, 1926; and an action of

TORT with a writ dated June 3, 1926, described in the opinion.

Proceedings in the Superior Court and facts there appearing are described in the opinion. From interlocutory and final decrees, entered in the suits in equity by order of *Lummus*, J., the plaintiffs appealed; and, after an order for judgment for the defendants, entered by his order in the action at law, the plaintiff therein alleged exceptions.

The cases were submitted on briefs.

*L. C. Henin*, for the plaintiffs.

*J. P. Kirby*, for the defendants.

RUGG, C.J. These four suits in equity and one action at law concern land and water used in connection with the water supply of the city of Springfield. The same person was appointed master and auditor who, after taking a view of the various properties involved, filed a comprehensive report in each case. The evidence is not reported. After the reports were filed the trial judge without objection heard evidence (which is not reported) and found certain facts in addition to those stated in the reports. Interlocu-

tory decrees were entered confirming the master's reports and final decrees dismissing the bills. In the action at law objections to the auditor's report were overruled and judgment was ordered in favor of the defendants. The suits in equity come before us on appeals by the plaintiffs and the action at law comes on exceptions by the plaintiff. The several plaintiffs are Vincent E. Barnes and Ellen L. Barnes, husband and wife, Vincent E. Barnes alone and Sadie B. Knox, the grantee of Vincent E. Barnes by deed dated in 1925. Reference will be made to Mr. and Mrs. Barnes as the plaintiffs except where a different designation is required. The defendants are the city of Springfield and persons claiming by, through or under it. The city will be meant whenever the word defendant is hereafter used unless otherwise stated.

Since the evidence is not reported, the findings of fact made in the several cases must be accepted as true.

I. The issues in all the cases are very largely determined by the validity, nature and effect of a taking of land, water and water rights made by the city of Springfield in 1907. An underlying and main contention of the plaintiffs is that the taking of land and of water rights of the plaintiffs was illegal on several grounds and that the defendants were therefore trespassers from the beginning and as such are liable to the plaintiffs in damages. That taking purports to have been made pursuant to St. 1906, c. 317, by an instrument in writing executed by the board of water commissioners of Springfield on January 21, 1907, and on that date and also on April 16, 1907, recorded in the registry of deeds. A plan was also filed with the description in the taking; it was referred to in the taking and copy of it is annexed to the report. Speedily after its taking the city made entry upon lands taken and expended large sums of money in the development of additions to its system of waterworks and the water was used as supplementary to its other sources of supply.

(1) The title of St. 1906, c. 317, was "An Act to authorize the city of Springfield to increase its water supply." By § 7 provision was made for the assessment of damages

sustained by any person by the taking of his property pursuant to the statute by petition filed within two years after such taking. The plaintiffs within that period of time, that is to say, on January 20, 1909, brought a petition for the assessment of their damages sustained by the taking made on January 21, 1907, in conformity to § 7. The petition was referred to an auditor. Hearings were held before him for twenty days in December, 1913, and January, 1914, and then were suspended until 1923. The report of the auditor was filed in 1926. There was a trial by jury and verdicts for the plaintiffs for considerable sums were rendered in 1928. At that trial the plaintiffs introduced evidence as to the value of their property for all uses. The case came to this court and rescript ordering judgment in favor of the plaintiffs for specified sums was sent in 1929. *Barnes* v. *Springfield*, 268 Mass. 497. Final judgment in favor of the plaintiffs in accordance with the rescript was entered and the amount of that judgment has been tendered to the plaintiffs and has been refused by them.

The first of the present proceedings was brought in 1920, the second in 1925, and the three others were brought in 1926. Thus it appears that the plaintiffs filed the petition for the assessment of their damages, a petition which has finally gone to judgment in their favor, eleven years before the first of the present group of proceedings was instituted. That petition admitted for the purposes of that proceeding "the taking, its validity, the regularity of the proceedings, and the constitutionality of the act." *Barnes* v. *Springfield*, 268 Mass. 497, 503. The commencement and prosecution to final judgment of that petition for assessment of damages in the circumstances disclosed preclude the plaintiffs from making in the present cases the contentions as to the invalidity of the taking there held to be not open to them. A landowner, who contests the constitutionality of a statute or the regularity of the procedure under which his land appears to have been taken by eminent domain, is not obliged to select at his peril the correct remedy and be barred from damages if he fails in his other contentions. It is usual in statutes authorizing the exercise of eminent

domain so to limit the time for bringing petitions for damages that it might expire before the final decision of a proceeding seasonably begun designed to attack the validity of the statute or the taking. In such case a party ought not to be held to a selection of remedy at his peril. *Radway* v. *Selectmen of Dennis*, 266 Mass. 329, 336. The cases at bar do not fall within that principle. These plaintiffs have waited an unconscionable period of time before undertaking to assail the statute or the procedure under which the defendant acted, and at the same time have been prosecuting their petition for damages based on the validity of the acts of the defendant. They have seen the expenditure of great sums of money by the defendant in reliance upon the validity of the taking without initiating any process to test the legality of that taking. They have slept for more than a decade upon the rights here asserted while maintaining a petition in substance and effect stating to the defendant that its acts were legal. It is trifling with the courts to involve the public treasury in expensive trials and parties in great delays affecting important public undertakings in this way. The final judgment on their petition for assessment of damages must be held to be a waiver of rights to maintain the present proceedings and an election to depend upon the petition for damages. See *Moore* v. *Sanford*, 151 Mass. 285, 287. This is not a question of laches. It is a case where the underlying principle of *Broitman* v. *Silver*, 278 Mass. 510, is applicable. This is not an instance where parties have surrendered their right to damages on the theory that the taking was invalid and have relied alone upon strict legal rights. They have experimented by ascertaining the amount of damages, to which they are entitled on the theory of a legal taking, finally established in 268 Mass. 497, and they now seek to have all that go for naught and invoke the aid of the court to declare invalid the costly constructions made by the defendant for the public welfare. That course is contrary to law. In the circumstances disclosed the plaintiffs are bound to abide by the result of their petition for the assessment of damages. This is the sound principle precisely supported by authority.

*Pinkham* v. *Chelmsford,* 109 Mass. 225, 229.  *Attorney General* v. *Methuen,* 236 Mass. 564, 582.  *Byfield* v. *Newton,* 247 Mass. 46.

(2) Considering on their merits the objections now urged by the plaintiffs, there is nothing to show that there was invalidity in the taking.  It is too plain for discussion that St. 1906, c. 317, under which the taking by eminent domain was made violated no rights of the plaintiffs secured by Constitution of this Commonwealth or of the United States. The use for which the taking was authorized was public. All rights of landowners as to just compensation, notice, limitation for time of bringing petition for damages and otherwise were guarded.  *Frost Coal Co.* v. *Boston,* 259 Mass. 354.  The statute was duly accepted by the city and the board of water commissioners were authorized to make the taking.  There was nothing to show want of authority on the part of the officers to act in behalf of the city.  They were at least *de facto* officers and their title is not open to attack in these proceedings.  *Prince* v. *Boston,* 148 Mass. 285.  *Sevigny* v. *Lizotte,* 260 Mass. 296.  The finding of the master is categorical to the effect that the defendant caused to be recorded as to the lands here involved a description as certain as is required in a common conveyance of land and filed therewith a map drawn to scale of the lands taken and described, all in conformity to St. 1906, c. 317.  This finding includes the point four hundred feet above mean sea level.  Whether a description of land and water and water rights and a map delineating the same are definite when applied to the face of the earth is largely a question of fact.  The description here assailed was chiefly by monuments or bounds most of which were exactly located.  Although the description of this taking might have been more precise in some particulars, the finding cannot be pronounced erroneous.  *Kohlhepp* v. *West Roxbury,* 120 Mass. 596, 599.  *Burnett* v. *Commonwealth,* 169 Mass. 417, 425.  All the waters of the river and its tributaries at a stated point were taken.  The rights of the defendant under the taking were absolute no matter when exercised. *Howe* v. *Weymouth,* 148 Mass. 605.  The necessity and extent

of the taking are not open to review.  *Broderick* v. *Department of Mental Diseases*, 263 Mass. 124, 128.

The taking was valid under a statute which violated no constitutional right of the plaintiffs.

These matters also have become *res judicata* by *Barnes* v. *Springfield*, 268 Mass. 497.  The interlocutory decree overruling exceptions to the master's report and confirming that report was rightly entered.

II.  The plaintiffs contend that even though the taking be held to be valid there has been excessive use of the easements acquired in the land.

(1) The plaintiffs contend that the city has no right to use the water of the stream for the generation of electricity and the land for the installation of works, machinery and transmission lines for the sale of the electricity so generated. It was provided in St. 1906, c. 317, § 1, that the defendant might take the waters of Westfield Little River and use the same "for any and all purposes for which said city is or may be authorized to use water; and may take and hold, by purchase or otherwise, any lands" which its board of water commissioners "may deem necessary for any of the purposes of this act . . . or for carrying out any of the powers and duties conferred by this act."  By § 2 the city was empowered to make extensive constructions including buildings, tunnels and other structures as well as dams and reservoirs.  The words in § 1 empowering the city to take and use the waters for purposes for which it "is or may be authorized to use water" mean that such taking is not only for purposes for which authority has been conferred but also for those purposes for which authority may hereafter be conferred by the Legislature.  Only in this way can the words "or may be" be given force and effect.  This result follows from the familiar rule of statutory construction that every word of legislative enactments must be given weight.  *Commonwealth* v. *McCaughey*, 9 Gray, 296, 297.  *Eaton, Crane & Pike Co.* v. *Commonwealth*, 237 Mass. 523, 530.  *Paquette* v. *Fall River*, 278 Mass. 172. The city was of course required by § 7 to pay any and all damages to persons injured by any act of eminent domain

based on the scope of the taking exercised under § 1. The takings måde were coextensive with the power conferred. It is strongly urged by the defendant that by virtue of earlier statutes, St. 1872, c. 345, §§ 1, 12, St. 1889, c. 368, § 1, it was authorized to use the water of its water system for the generation of power. Without discussing that contention, we pass to the consideration of Spec. St. 1918, c. 163. Thereby the defendant was empowered to "utilize the fall of water on any part of its water system as the same now is or may hereafter become for the purpose of producing power or of generating electricity" and to "transmit such power or electricity by wires or other suitable means" and to use the same itself and sell the same to any city, town or corporation within specified geographical limits all subject to stated restrictions. After the taking in 1907 of the waters of the river the city began the development of the additional water supply. The master finds: "After surveys had been sufficiently made the city proceeded through its engineers to make plans for the development of the property as a source of water supply and these plans not only contemplated and were made with reference to the immediate needs of the city of Springfield and towns purchasing water from the city, but also as to future needs. From time to time these plans were changed but the main purpose of the plans and of any work done thereunder was to provide water for the city of Springfield for domestic purposes. In the course of its development work the city was obliged to construct roads so as to obtain access to the lands taken, to build telephone lines and later to build power lines for the transmission of electricity so that electric power might be used in the construction work." The city built diversion dams, tunnels and other structures designed to impound and convey the water for its domestic water supply. "Meanwhile, the city while all of this work was under construction, was making plans for further development looking to the future of the water supply system. In time these plans took shape so that the use of the stream for the generation of electricity was considered, the engineers and the commissioners believing that in this way

some of the cost of the construction and operation of the system might be regained. Pursuant to these plans the construction of a power house, and of another reservoir, now known as Cobble Mountain Reservoir, and tunnels and construction connected therewith, was undertaken." The master describes in detail the power plant and structures constructed in its development and states that all the water taken will under ordinary circumstances pass to the power plant for transformation of the force developed by its fall into electric energy. A power plant has been built under a contract dated in June, 1928, and approved by the department of public utilities on August 1, 1928. Lines for transmission of the electricity thus generated and possibly other structures connected with the electrical development are upon land taken from the plaintiffs. The city has sold the electricity for a term of years as authorized by Spec. St. 1918, c. 163, to a corporation engaged in the transmission and sale of electricity.

A considerable amount of timber standing upon lands taken from the plaintiffs has been sold by the city to vendees who have cut and removed it and who are named as defendants in some of the proceedings at bar.

As to the constructions made by the city in connection with the electrical development and the cutting of wood and timber the master finds that "the work which was done by the city and the structures which were erected and the construction that was made and the cutting of timber by the city and by the Pecks, was necessary and proper as things to be done by the city under the provisions of c. 317 of the acts of 1906 and also under the provisions of c. 163 of the [special] acts of the year 1918."

The fair implication from all the findings of the master is that the development of electrical energy from the fall of the water by the city was incidental to the main purpose of the taking, namely the increasing of its water supply. The situation then is that the Legislature by St. 1906, c. 317, § 1, authorized the city to take all the waters of the river for increasing its water supply and empowered it to use those waters not only for all purposes then authorized but

for all purposes in the future authorized by the Legislature. This is the meaning of the words of that section already quoted. The right of taking conferred and exercised extended to all the waters of the stream. One purpose of the taking is to fix the rights of the parties, including the right of the owner of water rights to damages. The probability or possibility that the city might not exercise the full amplitude of its rights could not be considered to reduce the damages of the landowner. The plaintiffs were entitled to recover in their petition for compensation the entire damage sustained by them by the loss of the rights taken by the city to use all the waters of the stream for any purpose then, or thereafter to be, authorized to be assessed as of the date of the taking. The whole right has been taken without regard to its exercise. That right has been merged in the judgment in favor of the plaintiffs in their petition for damages. *Howe* v. *Weymouth,* 148 Mass. 605. *Proprietors of Mills* v. *Randolph,* 157 Mass. 345, 353. It rested with the General Court to determine whether in the future the city should be permitted to make a use of the water for public purposes different from or in addition to that originally specified. That determination was made in favor of the city by Spec. St. 1918, c. 163. That is a subject concerning which the landowner has no interest because all his rights to water and water rights have been extinguished by the original taking. *Higginson* v. *Treasurer & School House Commissioners of Boston,* 212 Mass. 583. *Chase* v. *Sutton Manuf. Co.* 4 Cush. 152.

(2) The same considerations lead to the conclusion that the rights acquired by the city by the taking of land of the plaintiffs have not been exceeded by the electrical constructions placed upon such land. Even if the city did not acquire by its taking a fee in the land taken, *Harback* v. *Boston,* 10 Cush. 295, it at least took such rights as were reasonably necessary to exercise all title acquired by it to the waters of the river. The purpose of the taking fixes the extent of those rights. That purpose was to enable the city among other matters to build all structures necessary to use the waters to the best advantage to the extent

authorized by the statutes.  Whatever rights over, on or under the surface of land taken are necessary in order to purify, protect, use, and transmit the water or the electrical energy generated by it are included within the scope of the taking.  *Newton* v. *Perry*, 163 Mass. 319, 321.  *Chase* v. *Sutton Manuf. Co.* 4 Cush. 152.  The determination whether to make the electrical development was vested in the city.  Its officers acting in good faith were the sole judges of the necessity.  *Commonwealth* v. *Abbott*, 160 Mass. 282, 285.  *Broderick* v. *Department of Mental Diseases*, 263 Mass. 124.  The right to develop and sell power was thus incidental to the main purpose of St. 1906, c. 317.  *Salisbury Land & Improvement Co.* v. *Commonwealth*, 215 Mass. 371, 378.  *United States* v. *Chandler-Dunbar Water Power Co.* 229 U. S. 53.  As a practical matter the taking excluded the landowner from the use and occupation of his land even though a fee may not have been taken.  *Lancy* v. *Boston*, 186 Mass. 128, 131.  *Saltonstall* v. *New York Central Railroad*, 237 Mass. 391, 397.  This decision casts no doubt upon the soundness of decisions like *Clark* v. *Worcester*, 125 Mass. 226, and *Perley* v. *Cambridge*, 220 Mass. 507, where different circumstances were disclosed.  *Selectmen of Topsfield* v. *Department of Public Utilities*, 267 Mass. 343, 348.

No discussion is required to demonstrate that the development of electricity by a municipality for light, heat and power for the use of the general public is a function which may be conferred by a statute such as Spec. St. 1918, c. 163.  It is a public use.  This conclusion follows from settled principles.  *Opinion of the Justices*, 150 Mass. 592; *Opinion of the Justices*, 155 Mass. 598, 605.  *Citizens' Gas Light Co.* v. *Wakefield*, 161 Mass. 432, 439.  *Whiting* v. *Mayor of Holyoke*, 272 Mass. 116, 119.  See *Opinion of the Justices*, 237 Mass. 598; *Duncan* v. *New England Power Co.* 225 Mass. 155; *Talbot* v. *Hudson*, 16 Gray, 417.

The circumstance that Spec. St. 1918, c. 163, § 3, gave specific authority to the city as to taking by eminent domain lands and easements in furtherance of the powers therein conferred does not constitute or indicate a limita-

tion on its right to use lands already acquired by it. There are in several sections of Spec. St. 1918, c. 163, provisions for sale and use of electrical power which might require the exercise of that right on lands not theretofore acquired by the city and not needed for the development of the domestic water supply system. It was natural therefore that express power to that end should be included in the statute.

(3) The taking of lands for purposes of a water supply is incompatible with the idea of divided control over that land. The necessities of the public welfare import exclusion of all others from use of the land and of that which grows thereon unless rights of that nature are excluded from the scope of the taking. The former owner has no right to trees or standing timber after unqualified taking ·such as here was made. The right of the defendant to sell the standing timber upon the land taken followed from the taking. Its rights passed to its vendees. *Brainard* v. *Clapp,* 10 Cush. 6, 11, 12. *Boston* v. *Richardson,* 13 Allen, 146, 159. *White* v. *Foxborough,* 151 Mass. 28, 40. *Broderick* v. *Department of Mental Diseases,* 263 Mass. 124, 127. There is nothing at variance with this conclusion in *Agostini* v. *North Adams Gas Light Co.* 265 Mass. 70, where the taking was for a different purpose, and the circumstances were quite distinct from those here presented.

For all these matters, the plaintiffs were entitled to recover whatever damages they sustained in their petition for damages, even though the acts of the defendant may not have occurred until after the filing of the petition. *Boston* v. *Richardson,* 13 Allen, 146, 159. *Barnes* v. *Springfield,* 268 Mass. 497, 509.

III. In the suit by Vincent E. Barnes against the city three parcels of land are described, two of which require separate consideration.

(1) One is described as containing thirteen acres. The master found that the plaintiff owned this parcel. It was taken by an instrument filed and recorded on December 16, 1908, but the plaintiff had no knowledge of the taking until shortly before bringing this suit in 1926. He had lived in Westfield where the land was located a great many years

and had lived there most if not all of the time since the taking. He knew in general about the constructions being made by the defendant. He might easily have ascertained that some of these constructions were on this land. The master finds that the defendant used good faith in endeavoring to find the owner of this tract; it selected to examine the titles an able attorney who failed to discover the name of the true owner and the name was not known to the defendant; the land was in a district where values were small. It is required by St. 1906, c. 317, § 6, that after taking any property the board of water commissioners of the city "shall notify the owner or owners thereof, if known to them." The most that these words of § 6 require is the exercise of good faith and reasonable intelligence on the part of the city officers to ascertain and notify the owners of land taken. They do not make the validity of a taking dependent upon actual notice to the true owner if such owner is not known. The findings of the master are unequivocal to the effect that ignorance as to the owner of this tract by the officers of the defendant was honest and in spite of wise effort to learn who he was. The filing of the description and plan in the registry of deeds satisfied every constitutional requirement. Actual notice is not requisite to a valid taking by eminent domain. *Appleton* v. *Newton*, 178 Mass. 276. *Sweet* v. *Boston*, 186 Mass. 79. *Frost Coal Co.* v. *Boston*, 259 Mass. 354. It follows that the taking of this tract was valid and vested in the city the title purporting to be taken. For reasons already stated the title to trees on the land also passed to the city.

(2) Title to another parcel of land described in this suit was at the time of the taking by the city vested in one Hallbourg. The procedure adopted in taking lands of the plaintiffs was followed in taking the Hallbourg land. Hallbourg filed a petition under St. 1906, c. 317, for damages sustained by him by the taking, damages were assessed and the amount thereof was paid to him by the defendant. The decision in the earlier part of this opinion to the effect that the taking was valid disposes adversely of the contention of this plaintiff that the subsequent deed to him of the Hall-

bourg land conveyed any title now capable of being urged against the defendant. All rights of this plaintiff are subject to the rights of the city acquired by the taking. The finding of the master is that whatever was done by the city with reference to this parcel was done pursuant to St. 1906, c. 317, and was necessary to carry out the purposes of that statute, that for whatever land was taken and whatever things were done by the city Hallbourg was compensated and that if the taking was valid the plaintiff was not entitled to damages. Since the taking was valid for reasons already stated, the plaintiff cannot prevail.

As to several of these proceedings the defence is urged that the acts of the defendants of which complaint is made occurred after the institution of the proceedings. That might be a valid defence. *Bartlett* v. *New York, New Haven & Hartford Railroad,* 226 Mass. 467, 471. This decision, however, rests upon the underlying rights involved and already discussed.

The force of other arguments urged in defence need not be examined. All the arguments put forward in behalf of the plaintiffs have been considered but they need not be discussed in further detail. It is not necessary to state in greater particularity the parties, their relations to the subject matter or the claims asserted in the several proceedings. The principles governing the rights of the several parties and the rights alleged have all been set forth. No sound ground for relief is shown in any of the proceedings.

The result is that in the several suits in equity the interlocutory decrees are affirmed and the final decrees are affirmed with costs and that in the action at law the exceptions are overruled.

*Ordered accordingly.*