STEPHEN P. MUGAR & another,[1] trustees, *vs.*
MASSACHUSETTS BAY TRANSPORTATION AUTHORITY.

No. 88-P-587.

Middlesex. December 11, 1989. - March 29, 1990.

Present: WARNER, C.J., KASS, & FINE, JJ.

*Easement. Eminent Domain*, Purpose of taking, Validity of taking, Damages. *Real Property*, Easement.

In an eminent domain proceeding in which the sole issue was the adequacy
of compensation to be paid by the Massachusetts Bay Transportation
Authority (MBTA) to landowners for a so-called access easement
which the MBTA described as a "required . . . undefined right of access to [a certain vent shaft parcel] from the city streets," the judge
properly instructed the jury that they must construe the access easement "in the broadest possible sense as to the use of the MBTA of that
area in exercising that right reserved to them . . . " where, absent action by the MBTA limiting the scope of access either before the taking,
or, with the landowners' agreement, after the taking, the jury could
only consider the terms of the taking as they existed at the time of
recording and assess damages based on the MBTA's exercise of its
right of access to its full extent. [444-447]

CIVIL ACTION commenced in the Superior Court Department on December 24, 1979.

The case was tried before *Richard S. Kelley*, J.

*Albert E. Good* (*Carol A. Buckley* with him) for the defendant.

*George A. McLaughlin, Jr.* (*Theodore E. Daiber* with him) for the plaintiffs.

WARNER, C.J. The plaintiffs are the owners, as trustees, of the land and buildings known as the Porter Square Shopping Center in Cambridge. In connection with the extension of its red line from Harvard Square to Alewife station, the Massachusetts Bay Transportation Authority (MBTA) made eleven fee and easement takings by eminent domain, see

---

[1]Benjamin Brown.

G. L. c. 161A, § 3(*o*), of parcels in and under the center's parking lot. One of the fee takings was a 3,224 square foot area located near the center of the parking lot and designated for construction of a subway vent shaft. At issue in this appeal is the scope of a complementary easement (access easement) which the MBTA described as a "required . . . undefined right of access to the [vent shaft parcel] from the city streets." The shopping center is surrounded by four public streets, with a total frontage of 1852 feet.

At trial, the plaintiffs' expert on damages testified that the MBTA's access easement gave it unlimited rights of passage from the city streets and prevented building anywhere in the parking lot. The judge denied the MBTA's request that he instruct the jury that a required undefined right of access from the city streets (1) must be interpreted reasonably, and (2) means that as long as the access is reasonable, the owner can determine the right of access. Rather, the judge instructed that the jury must construe the access easement "in the broadest possible sense as to the use of the MBTA of that area in exercising that right reserved to them . . . ." The MBTA properly made objection. There was no error.

The extent of an easement depends on the circumstances of its creation. Easements arising by prescription, for example, are fixed in scope by the use through which they are created. *Carson* v. *Brady*, 329 Mass. 36, 42 (1952). Restatement of Property § 477 (1944). When created by conveyance, the grant or reservation "must be construed with reference to all its terms and the then existing conditions so far as they are illuminating." *J.S. Lang Engr.* v. *Wilkins Potter Press*, 246 Mass. 529, 532 (1923). *Hewitt* v. *Perry*, 309 Mass. 100, 105 (1941). The extent of a conveyed undefined right of way turns on the circumstances evidencing the intent of the parties to the transaction. See *Dunham* v. *Dodge*, 235 Mass. 367, 372 (1920); Restatement of Property § 483 (1944). Also, the "practical location and use of [the way] by the grantee acquiesced in by the grantor may operate as an assignment of the right and be deemed to be that which was intended to be conveyed." *Rajewski* v. *MacBean*, 273 Mass.

1, 6 (1930). *LaBounty* v. *Vickers*, 352 Mass. 337, 345 (1967). The parties are also free to locate a previously undefined right of access. *Brooks* v. *Quinn*, 266 Mass. 132, 137 (1929). *DeSotell* v. *Szczygiel*, 338 Mass. 153, 158 (1958). In the absence of agreement, the court may fix the bounds of a way not located by the instrument creating it. *Mahoney* v. *Wilson*, 260 Mass. 412, 414 (1927).

As a general rule, unless the parties agree or circumstances disclose otherwise (see *J.S. Lang Engr.* v. *Wilkins Potter Press*, 246 Mass. at 532), a right of way not definitely fixed by deed will be construed as the "right to such way as is reasonably necessary and convenient for the purposes for which it is granted." *Pratt* v. *Sanger*, 4 Gray 84, 88 (1855). *McKenney* v. *McKenney*, 216 Mass. 248, 251 (1913). *Western Massachusetts Elec. Co.* v. *Sambo's of Mass., Inc.*, 8 Mass. App. Ct. 815, 824 (1979). The reason for the rule is that "[t]he law, carrying into effect the intention of the parties, does not intend to restrict the right of ownership . . . further than is necessary to give full effect to the easement." *Atkins* v. *Bordman*, 2 Met. 457, 471 (1841).

The principles of interpretation designed to give effect to the express or implied intent of parties contracting for or acquiring an interest in land, however, are, in general, inapplicable to eminent domain proceedings. The MBTA's reliance in this appeal on cases involving transfers or prescriptive rights involving private parties is, therefore, misplaced. The taking of private property for a public purpose may be accomplished without the consent of the owner. *Turner* v. *Gardner*, 216 Mass. 65, 70 (1913). The owner's intent is irrelevant in determining the extent of an easement taken by eminent domain, and the intent of the governmental body is largely beyond the scope of judicial scrutiny. See *Despatchers' Cafe, Inc.* v. *Somerville Housing Authy.*, 332 Mass. 259, 263-264 (1955).[2]

---

[2]The court may in certain circumstances examine the motive for the exercise of the eminent domain power and invalidate a taking upon a finding of bad faith. See *Pheasant Ridge Associates Ltd. Partnership* v. *Burlington*, 399 Mass. 771, 775-776 (1987).

The taking of private property for a public purpose by eminent domain is an inherent attribute of sovereign power. *Burnes* v. *Metropolitan Dist. Commn.*, 325 Mass. 731, 734 (1950). Thus, it is solely within the prerogative of the Legislature, or its delegates, to determine the necessity for the taking and the quantum of estate needed to fulfil the public purpose. See *Dingley* v. *Boston*, 100 Mass. 544, 560 (1868); *Winnisimmet Co.* v. *Grueby*, 209 Mass. 1, 3 (1911); *Barnes* v. *Peck*, 283 Mass. 618, 624-625 (1933); *Burnham* v. *Mayor and Aldermen of Beverly*, 309 Mass. 388, 390 (1941); *Luke* v. *Massachusetts Turnpike Authy.*, 337 Mass. 304, 308 (1958). Judicial review is limited to the questions whether a taking was made for a legitimate public purpose, see *ibid.*; *Boston* v. *Talbot*, 206 Mass. 82, 90 (1910); *Caleb Pierce, Inc.* v. *Commonwealth*, 354 Mass. 306, 309 (1968); and whether the deprived landowner received just compensation, both being required by art. 10 of the Declaration of Rights of the Massachusetts Constitution and the Fourteenth Amendment to the United States Constitution. See *Dingley* v. *Boston, supra* at 558; *Opinion of the Justices*, 365 Mass. 681, 690 (1974).

The MBTA determined that it needed an "undefined easement" from the surrounding streets across the plaintiffs' property to build and maintain its vent shaft. The public purpose of the taking is unquestioned. The sole issue before the Superior Court was the adequacy of compensation. Any attempt by the judge to limit the scope of the easement would have usurped the MBTA's delegated prerogative to determine the scope of the taking necessary for the project.

Subsequent circumscription of the scope of the access easement, absent agreement by the plaintiffs, by court action or by the MBTA would in any event not avail the MBTA, as the plaintiffs' right to compensation vested at the time of taking. See *Old Colony R.R.* v. *Miller*, 125 Mass. 1, 3, 5 (1878); *Drury* v. *Midland R.R.*, 127 Mass. 571, 584-585 (1879); *Hay* v. *Commonwealth*, 183 Mass. 294, 295 (1903); G. L. c. 79, § 12. See also *North Carolina State Hy. & Pub. Works Commn.* v. *Black*, 239 N.C. 198, 204 (1954); *City of*

*New York* v. *Borough of The Bronx*, 58 Misc. 2d 873, 876 (1968), aff'd., 28 N.Y. 2d 812 (1971); *Levcowich* v. *Westerly*, 492 A.2d 141, 143-144 (R.I. 1985). The MBTA was free to limit the scope of access either before the taking, or, with the plaintiffs' agreement, after the taking. Absent such action, "payment must be made for the rights which have been acquired, not for the more limited use to which the condemnor may intend to devote the property taken." 4A Nichols Eminent Domain § 14.15 (1989). See *Barnes* v. *Peck*, 283 Mass. at 627-630. Thus, in the circumstances, the jury could only consider the terms of the taking as they existed at recording, see *Turner* v. *Gardner*, 216 Mass. at 69, and assess damages based on the MBTA's exercise of its right of access to its full extent. See *Amory* v. *Commonwealth*, 321 Mass. 240, 249 (1947). The jury were properly instructed.

*Judgment affirmed.*